# THE BAYONNE.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 215. Submitted November 18, 1895. — Decided December 2, 1895.

The District Court of the United States for the Southern District of New York has monthly terms. The decree in this case was entered December 21, and an appeal allowed December 31, 1892. On the 17th of the following January, during a new term of the court, the assignment of errors was directed to be filed *nunc pro tunc* as of December 31, 1892. *Held*, that if that assignment could be treated as a certificate, it came too late, and, as there was nothing in the record prior to the expiration of the December term, to indicate any attempt or intention to file a certificate during that term, and there was no omission to enter anything which had actually been done at that term, the case did not come within the rule that permits an amendment of the record *nunc pro tunc.*

The filing of an assignment of errors in a Circuit Court, by order of that court and the taking a general appeal and its allowance by that court, is not a compliance with the statutory provision in the judiciary act of March 3, 1891, c. 517, 26 Stat. 826, and is not equivalent to the certificate required by that act.

In so deciding the court must not be understood as intimating any opinion upon the question whether jurisdictional questions existed, within the meaning of § 5 of the act of March 3, 1891.

*In re Lehigh Mining & Manufacturing Co.*, 156 U. S. 322, and *Shields* v. *Coleman*, 157 U. S. 168, distinguished from this case.

THIS was a libel filed by the United States in the District

Court for the Southern District of New York to recover a penalty from the steamship Bayonne, under the act of Congress· approved June 29, 1888, entitled " An act to prevent obstructive and injurious deposits within the harbor and adjacent waters of New York city, by dumping or otherwise, and to punish and prevent such offences." 25 Stat. 209, c. 496. The first section of that act provides :

" That the placing, discharging, or depositing, by any process or in any manner, of refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind, other than that flowing from streets, sewers, and passing therefrom in a liquid state, in the tidal waters of the harbor of New York, or its adjacent or tributary waters, or in those of Long Island Sound, within the limits which shall· be prescribed by the supervisor of the harbor, is hereby strictly forbidden, and every such act is made a misdemeanor, and every person engaged in or who shall aid, abet, authorize, or instigate a violation of this section, shall, upon conviction, be punishable by fine or imprisonment, or both, such fine to be not less than two hundred and fifty dollars, nor more than two thousand five hundred dollars, and the imprisonment to be not less than thirty days, nor more than one year, either or both united, as the judge before whom conviction is obtained shall decide, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction of this misdemeanor."

The act further provides for the punishment of every master, engineer, or person or persons acting in such capacity, respectively, on board of any boat or vessel, who shall knowingly engage in. towing any scow, boat, or vessel loaded with prohibited matter to an unauthorized place of deposit; requires masters of scows and boats carrying such matter to apply to the supervisor of the harbor for a permit defining the precise limits within which their contents might be discharged, and provides for a remedy in admiralty by the concluding paragraph of section four, which reads as follows : " Any boat or vessel used or· employed in violating any provision of this act, shall be liable to the pecuniary penalties

imposed thereby, and may be proceeded against summarily by way of libel in any District Court of the United States having jurisdiction thereof."

The supervisor of the harbor, assuming to act under and by virtue of the statute, directed that the prohibited matter must not be deposited "except to the south and east of a certain white spar buoy, known as the 'Mud buoy,' which buoy is three miles south of Coney Island and located as follows: Stone Beacon light bearing west ¾ south, distant 4½ miles; West Brighton observatory bearing northwest by south ½ north, distant 3½ miles; Sandy Hook lighthouse bearing southwest, distant 6 miles; Scotland lightship bearing south ½ west, distant 6¼ miles; Sandy Hook light bearing south southwest, distant 7¾ miles."

Certain ashes were dumped from the deck of the Bayonne into tidal waters, not to the south and east of the Mud buoy, but to the southward and westward thereof, at or near the mouth of Gedney's channel, at a point more than three miles from Sandy Hook and more than three miles from Coney Island and the shore of Long Island. These ashes were dumped by the direction of the mate for the relief of the ship in the usual course of her navigation, the vessel being at the time about twenty minutes beyond Sandy Hook, contrary to the orders of the master, which were that ashes should not be put overboard until the ship was an hour at sea after the pilot left her, and this constituted the alleged use and employment of the vessel in violation of the act of Congress.

It was adjudged by the District Court that by force of the statute and of the definition of the limits by the supervisor where the deposit of ashes must take place, the steamship became liable to a penalty of $250, for which sum, with costs, a final decree was entered in favor of the United States, December 21, 1892. On the 31st of December the claimant filed the following prayer for appeal:

"The above-named claimant, John Edward Payne, considering himself aggrieved by the final decree entered in this cause on the 21st day of December, 1892, hereby appeals

from said decree to the United States Supreme Court upon the ground that this court was without jurisdiction to make the said decree; and thereupon he prays that his said appeal may be allowed, and that a transcript of the record and proceedings and papers upon which said final decree was made may be sent up, duly authenticated, to the United States Supreme Court."

This was endorsed by the District Judge "appeal allowed."

On January 17, 1893, the following assignment of errors was filed as of December 31, 1892, by direction of the District Judge that the same should be filed *nunc pro tunc:*

"The learned court below erred in taking jurisdiction of the cause and entering a decree against the steamship Bayonne in the following particulars:

"First. Because the act in question creates no lien enforceable *in rem* except as against a boat or vessel used or employed in violating some provision of the act, whereas the Bayonne was not used or employed in violating any provision of the act.

"Second. Because the act does not create a lien enforceable against the Bayonne *in rem* to recover the penalties to which the person or persons who committed the offence complained of may have been subject under section one of the act.

"Third. Because if the act does create a liability on the part of the Bayonne for the pecuniary penalty to which the person or persons who committed the offence may be, subject under section one of the act, such penalty is not recoverable against the Bayonne *in rem* without a previous imposition of the fine upon the offender or offenders.

"Fourth. Because the limits within which the deposit of refuse matter was intended to be prohibited have never been drawn by the supervisor of the harbor in accordance with the requirements and specifications of the act or in accordance with law, and therefore the deposit of ashes at the place they were deposited by a person or persons from the deck of the Bayonne did not constitute an offence for which the Bayonne can be held responsible under the provisions of the act."

The appeal was duly prosecuted and the record filed in this court February 20, 1893.

A motion to dismiss having been made, appellant served notice of a motion "to remand this cause to the District Court for the purpose of having annexed to the record a certificate distinctly certifying to this court the jurisdictional questions involved in this appeal, or in the alternative for a writ of *certiorari* to have such certificate annexed to the transcript of record." Annexed to this motion was a certificate by the district judge, filed November 8, 1895, which, after stating the case, continued as follows:

"I further certify that the questions of jurisdiction involved in the said appeal of the claimant are:

"1. Whether the said steamship Bayonne, by reason of ashes being dumped from her deck by the order of her mate, contrary to the directions of the captain, was 'used or employed in violating any provision of this act,' within the meaning of the fourth section of said statute, so as to create a lien against the vessel enforceable by proceedings *in rem* to recover the penalty therein and thereby provided.

"2. The first section of the statute provides as follows [Here followed section already quoted].

"A further question of jurisdiction involved in the claimant's appeal is, whether the supervisor of the harbor, by simply prescribing that all refuse, dirt, ashes and other prohibited matter must be deposited to the eastward and southward of the said Mud buoy, has prescribed the limits within which the deposit of ashes and other prohibited matter is strictly forbidden as required by the above first section of the act, and, if so, whether the limits so prescribed are within the 'tidal waters of the harbor of New York, or its adjacent or tributary waters,' so as to make the deposit of the said ashes from the deck of said steamer, under the circumstances stated, and at the place specified, a violation of the statute, subjecting the steamer to the penalty therein provided."

This certificate was directed by the District Judge, November 8, 1895, to be filed *nunc pro tunc* as of January 17, 1893,

The motion to dismiss and the cross-motion to remand for certificate or for *certiorari* were submitted on briefs.

*Mr. Solicitor General Conrad* for the motion to dismiss.

*Mr. J. Parker Kirlin* opposing.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

No question as to the constitutionality of the act of Congress arises on this appeal, but it is contended that the jurisdiction of the District Court was in issue, and that therefore the appeal was properly taken directly to this court. But the judiciary act of March 3, 1891, provides that in cases where the jurisdiction of the court below is in issue, that question, and that alone, shall be certified to this court for decision, the inquiry being limited to the question thus certified. *United States* v. *Jahn*, 155 U. S. 109, 113.

In *Maynard* v. *Hecht*, 151 U. S. 324, we held that a certificate from the court below of the question of jurisdiction to be decided was an absolute prerequisite to the exercise of jurisdiction here, and indicated by reference to the settled rules in relation to certificates of division of opinion in what manner we thought the certificate should be framed.

In *Colvin* v. *Jacksonville*, 158 U. S. 456, it was decided that such certificate must be granted during the term at which the judgment or decree is entered.

The District Court of the United States for the Southern District of New York has monthly terms. Rev. Stat. 572. The decree here was entered December 21, and the appeal allowed December 31, 1892. On the seventeenth of the following January, during a new term of the court, the assignment of errors was directed to be filed *nunc pro tunc* as of December 31, 1892. If that assignment could be treated as a certificate, it came too late, and, as there is nothing in the record prior to the expiration of the December term, to indicate any attempt or intention to file a certificate during that

term, and there was no omission to enter anything which had actually been done at that term, the case did not come within the rule that permits an amendment of the record *nunc pro tunc*. *Hickman* v. *Fort Scott,* 141 U. S. 415, 418; *Michigan Insurance Bank* v. *Eldred,* 143 U. S. 293, 299. We do not, however, regard the assignment of errors, and the action of the court in directing it to be filed, as a compliance with the statutory provision and equivalent to the certificate required.

The certificate of November 8, 1895, which gives a statement of the case and certifies certain specific questions as questions of jurisdiction, was also wholly unavailing at that date.

Nor do we think that the allowance of the appeal can be treated as a certificate. The prayer for appeal did, indeed, state that claimant appealed " upon the ground that this court was without jurisdiction to make the said decree," but it specified no question of jurisdiction, and asked " that a transcript of the record and proceedings and papers upon which said final decree was made should be sent up," as if the appeal were on the whole case. The entry of the district judge thereon was " appeal allowed." This was wholly insufficient to subserve any other than the ostensible purpose.

In the case of *The Lehigh Mining and Manufacturing Company,* 156 U. S. 322, the defendant in an action of ejectment filed two pleas to the jurisdiction of the court, which pleas were sustained, and judgment thereupon entered as follows: " And for reasons in writing filed herewith, as part of this order, the court doth further consider that it has no jurisdiction of this case, and that the said action of ejectment be and the same is hereby dismissed for want of jurisdiction, but without prejudice to the parties to this suit." A bill of exceptions was taken, in which it was declared that the court " held that the court did not have jurisdiction of this suit, and ordered the same to be dismissed, to which opinion and action of the court, the plaintiff did then and there except." The plaintiff then prayed for a writ of error from this court, which was allowed by an order under the hand of the judge, and entered of record, reciting the final judgment entered, " dismissing the

said case because the said court, in its opinion, did not have jurisdiction thereof," and the plaintiff prayed for a writ of error "upon the said question of jurisdiction," and averring "that said writ of error be allowed and awarded as prayed for." Under these circumstances it was thought that the question was sufficiently certified.

In *Shields* v. *Coleman*, 157 U. S. 168, a receiver appointed by a state court intervened in a suit in the Circuit Court of the United States for the recovery of possession of railroad property from the receiver of the Circuit Court, and, his application having been denied, he prayed an appeal to this court from the decree and interlocutory orders by which the Circuit Court assumed and asserted jurisdiction over the property. The Circuit Court allowed the appeal by an order stating "this appeal is granted solely upon the question of jurisdiction," and reserving to the court the right, which it subsequently exercised, of determining what portion of the proceedings should be incorporated into the record for the purpose of presenting that question. We entertained jurisdiction in that case also. But we are of opinion that this case cannot be brought within either of those last cited.

The conclusion is that this appeal must be dismissed for want of jurisdiction, because of the lack of the proper certificate, a defect which cannot now be supplied. We have assumed that jurisdictional questions existed, within the meaning of section 5 of the act of March 3, 1891, though not properly raised, but we do not wish to be understood as intimating any opinion on that subject.

*Appeal dismissed.*