**RARDIN v. MESSICK.**

**MESSICK v. RARDIN.**

Nos. 5264, 5418.

Circuit Court of Appeals, Seventh Circuit.
June 25, 1935.

C. H. Douglas, of Mattoon, Ill., and Walter T. Gunn and Horace E. Gunn, both of Danville, Ill., for Messick.

T. N. Cofer, of Charleston, Ill., for Rardin.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

Messick, hereinafter called appellee, brought suit to obtain possession of four

United States Government bonds of the face value of $3,500, which she gave National Trust Bank of Charleston, hereinafter called the bank, a written order to purchase, shortly before that bank temporarily closed its doors on March 3, 1933, pursuant to the "Bank Holiday," as declared at that time by the President.

The order which appellee signed was one furnished by the bank and read as follows:

"Charleston, Illinois,
"Mar. 1–1933.
"The National Trust Bank,
"Charleston, Illinois.
"Gentlemen:
"Please enter my order through Federal Reserve Bank, Chicago, Chicago, Illinois, for the purchase of the following stocks:
"3500 3 1/8 46–49 Treas. Bonds.
"I hereby agree not to hold the National Trust Bank, Charleston, Illinois, liable in any way for the purchase, sale or delivery of the above mentioned stocks.
"Order filled.    Bertha S. Messick."

On the same day the bank requested the Federal Reserve Bank to purchase said bonds, charge them to its account, and forward the bonds as soon as delivered. The Federal Reserve Bank promptly executed the order, and the bonds were received by the bank during said Bank Holiday, and they remained in its possession until a conservator, and later a receiver, was appointed for said bank. When the holiday was terminated the bank failed to open and was at the time of the trial in liquidation.

When the order was given, appellee had $37.09 on deposit, subject to a checking account with the bank. She and her husband, during said period, were holders of a certificate of deposit, issued April 8, 1932, for $5000 payable on thirty days' notice to either of them or the survivor. On March 1, 1932, her husband had $7,184.67 on deposit with the bank, subject to check, and on the day the bank closed the amount was $7,-205.97. Appellee had on previous occasions purchased bonds from the bank, and the account of herself or her husband had been charged with their purchase price. The evidence justified the conclusion which the District Court drew, that the bank was authorized to charge the amount of the purchase against the account of appellee, of her husband, or of both.

The bonds arrived in Charleston, Illinois, on March 4, and were delivered to the bank on March 6.

The receiver of the bank disputed appellee's right to the bonds on the facts stated.

At the close of the trial the court filed a written memorandum, from which the foregoing facts are taken, and concluded by saying:

"There will be a decree for plaintiff against defendants directing the clerk to deliver the bonds to her as prayed, at the cost of defendants."

This opinion was filed March 6, 1934. Appellant immediately filed assignments of error and prayed an appeal from such ruling (calling it a decree). The appeal was duly allowed and bond was given. The appeal thus perfected is now before us for determination.

On the 26th of March, 1934, appellee's counsel presented to the court a final decree which was signed by the court and recorded by the clerk. This proposed decree was submitted to and approved as to form by appellant's counsel. It awarded the bonds to appellee.

Upon presentation of the cause to this court, the objection was made by appellee that the appeal was from the opinion of the court and not from its final decree. Upon the oral argument, we permitted the conservator to withdraw the record and submit to the District Court his motion for the presentation and entry of a nunc pro tunc order. The District Court was left free to determine whether a proper fact situation existed for the entry of a nunc pro tunc order. The court entered such an order, the material portion of which reads as follows:

"It Is Ordered that the decree signed and entered March 26, 1934 be entered nunc pro tunc as of March 6, 1934.

"It Is Further Ordered that this order is based upon the findings of fact filed herein and that such findings of fact embody the entire evidence applicable to this issue."

The findings upon which the order was based are set forth in the margin.[1]

---

[1] "This cause coming on to be heard upon the motion of J. Scott Rogers, J. H. Goodwin and Charles G. Adkins as Trustees of the National Trust Bank of Charleston, for an order directing that the decree signed and entered on March

■ The disposition of this appeal turns upon the validity of the nunc pro tunc order, for it is obvious that the memorandum or opinion from which the appeal was taken was not a final decree of the court.

■■ While this court in United States v. Chicago & A. R. Co., 250 F. 101, approved the procedure here followed, namely, the return of the record to the District Court to permit of the entry of a valid nunc pro tunc order, we are unable to find any authority for the entry of such an order upon a fact situation such as is here disclosed.

The second finding is significant and, we may add, fatal to the entry of a valid order.

No valid nunc pro tunc order may be entered unless there be a fact basis therefor, as this court pointed out in Hammond Hotel & Improvement Co. v. Chicago Title & Trust Co., 55 F.(2d) 168, 169. As there stated:

"* * * a nunc pro tunc order may only be validly made where there is a proper basis for its entry. If the order actually entered fails, because of a mistake or omission of the clerk or judge to state what the court actually ordered, correction may properly be made through a nunc pro tunc order. * * * There is, however, no authority for entering a nunc pro tunc order for the purpose of correcting a previously entered order which contained no error, omission, or mistake. In other words, the court cannot, at a later term, amend a previously entered order through the use of a nunc pro tunc order. * * *"

A few of the cases holding to the same effect are herewith collected.[2]

The District Court's statement to the effect that its memorandum was not regarded by the court as a final decree and the further finding that, on March 24, 1934, counsel for appellee submitted to counsel for appellant a proposed decree and on same date counsel for said appellant ap-

26, 1934 be entered nunc pro tunc as of March 6, 1934, the Court finds the following facts:

"1. That the Court's memorandum and findings of fact and law were signed and filed on March 6, 1934.

"2. That such memorandum, findings of fact and law were not regarded by the Court as a final decree.

"3. That notices for petition for appeal were filed by the appellant March 19, 1934.

"4. Order allowing appeal was entered March 19, 1934.

"5. The decree was signed and entered by the Court on March 26, 1934.

"6. That on March 24, 1934 counsel for plaintiff (appellee) submitted to counsel for the defendant (appellant) the formal decree and on that said date T. N. Cofer, counsel for defendant, approved the form of said decree by noting thereon the words 'O. K. T. N. Cofer.'

"7. That at said time on March 24, 1934 a copy of said decree was left with T. N. Cofer.

"8. That the original of said decree, approved by the counsel for the defendant and bearing the words 'O. K. T. N. Cofer' was mailed to the attorneys for the plaintiff at Danville and was on Monday, March 26 presented to Judge Lindley, signed by him and filed and entered on that date.

"9. That on May 23, 1934 the defendant-appellant filed its praecipe for rec-

ord, which praecipe requested that the clerk prepare the record to contain among other things the following:

A. Item 13 'Memorandum of decision of the Court'.

B. Item 15 'Decree.'

"10. That all of the above transactions including the preparation and filing of the praecipe for record set forth in the proceeding findings, were within ninety days of March 6, 1934.

"11. That T. N. Cofer was sole counsel for the defendant in this behalf; that said T. N. Cofer had no knowledge that said formal decree was filed as of March 26, 1934 until after July 1, 1934 and being after the lapse of ninety days from the date of said formal decree was so filed in said district court; that T. N. Cofer was not present and was not given any notice when the said formal decree was presented to the Judge of said district court and filed herein.

"12. That there is no rule of Court that requires a successful party to a litigation who has submitted to the opposite party a form of decree and secured his O. K., to notify such party of the time such decree will be presented to the Court for signature and entry."

2 In re Wight, Petitioner, 134 U. S. 136, 10 S. Ct. 487, 33 L. Ed. 865; The Bayonne, 159 U. S. 687, 16 S. Ct. 185, 40 L. Ed. 305; Brown v. United States (C. C. A.) 196 F. 351; Cyclopedia of Federal Procedure, § 1344; Klein v. Southern Pac. Co. (C. C.) 140 F. 213; The Princess Sophia (D. C.) 36 F.(2d) 591.

proved the form of said decree, together with the court's fifth finding that the decree was signed and entered by the court on March 26, 1934—all leave us with no doubt as to the ineffectuality of the so-called nunc pro tunc order. While we sympathize with the desire of the District Court to permit the defeated party the fullest possible opportunity to review its judgment and we commend the spirit that prompted such action, we are constrained, nevertheless, to hold, under the authorities, it was beyond the power of the court to preserve for review a question when the right to seek review had been lost by the lapse of time within which an appeal might be taken.

While the motion to dismiss the appeal on the ground that the opinion of the court is not an appealable decree is one that confronts us at the threshhold and its determination cannot be avoided by us, we have a strong urge to investigate the merits of the controversy, and by so doing satisfy ourselves that no different result would have been reached had the appeal been from the decree instead of from the opinion of the court.

The District Court in disposing of the case said:

"It is clear that the bank bought the bonds, acquired title thereto, from the Federal Reserve Bank and that it paid therefor with its own funds. But in doing this it was acting under specific instructions from plaintiff so to do. She ordered the bonds, directed the bank to buy the same for her, and agreed to settle therefor as she had previously done, by payment from the deposit upon which she had a right to draw. Clearly, therefore, the bank, in doing all that it did, was acting for plaintiff— was her agent.

"Where, then, was the equitable title to these bonds?

"It is universally the law that where an agent acquires title to property for his principal, he holds the same in equity for that principal. Good faith, essential to equity, so demands. * * * Equity does not permit a person agreeing to act for another to deal in his business of agency for his own benefit, and, if he takes in his own name a conveyance of an estate which he has agreed to purchase for another, he will, in equity, be considered as holding the estate in trust for his principal."

We are satisfied from a reading of the evidence in this case, the more essential parts of which consist of written documents, that the bank was merely the agent of the appellee in purchasing the bonds. If the bank acted as agent of appellee then the bonds purchased belonged to her. The bank was transacting business in its usual course when it accepted the written order of appellee to buy as appellee's agent certain Government bonds. It was not suspended or closed when the bonds arrived. True, they were delivered at a time when there was a national bank holiday during which time securities which arrived by mail or express were not delivered. At the close of the bank holiday the bank officials decided to close the bank permanently. But the rights of the parties were fixed at that time. The bonds had arrived and had been delivered to the purchaser's agent. The agent at the time of their receipt was not under legal disability to deliver the bonds to their owner and to apply the purchaser's deposit upon their payment. Had there been a sharp decline in the value of these bonds, she would have been the loser. The failure of the bank to immediately charge her account with the cost price of the bonds was due solely to the fact that the exact amount was unknown and did not become known until the Federal Reserve Bank notified its customer.

In appeal No. 5418, Messick is appellant, and the appeal is from the nunc pro tunc order. An examination of the record before us would indicate that there was also a mistake on the part of appellant in perfecting this appeal and in obtaining the order allowing the appeal. The appeal is from a decree entered on November 4, 1934. We are unable to find any decree entered on that date. Assuming as we do that the appeal is from the decree hereinbefore called the nunc pro tunc order, it is too apparent for argument that no such appeal will lie. It was not an appealable order.

The appeal in No. 5264 is dismissed.

The appeal in No. 5418 is dismissed.