The BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT NO. 202, COOK COUNTY ILLINOIS, et al., Plaintiffs,

v.

ADMIRAL HEATING AND VENTILATION, INC., et al., Defendants.

and

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 205, COOK COUNTY, ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

and

The STATE OF ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 C 3046, 79 C 3077 and 79 C 5253.

United States District Court, N. D. Illinois, E. D.

Sept. 30, 1981.

Wildman, Harrold, Allen & Dixon, Max Wildman, Douglas Carlson, Douglas Prochnow, Chicago, Ill., for Getschow defendants.

Edwin C. Thomas, Bell, Boyd & Lloyd, Chicago, Ill., for Economy Mechanical In-

1. 79 C 5253 is consolidated for discovery purposes only.

dustries, Inc. and Elmer R. Bruksch, defendants.

John B. Simon, Friedman & Koven, and John E. Burke, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for all other defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs in these three consolidated [1] class actions charge 22 piping and construction companies and 36 individuals with bid-rigging, price fixing and job allocation in the Chicago area from 1956 until 1977 in violation of the Sherman Act. Two sets of defendants (Phillips, Getschow Co., Lee E. Getschow and Roy Getschow, Jr. ["Getschow defendants"] and Economy Mechanical Industries, Inc. and Elmer R. Bruksch ["Economy"]) have filed objections to Magistrate Cooley's May 28, 1981 order (the "Amendment"), which amended Pretrial Order No. 2 (the "Order") to require all defendants to reimburse their designated lead counsel for attorney's fees and other expenses. Defendants Borg, Inc., Jeffrey Berg, Howard Salzman and F. E. Moran, Inc. (represented by the lead counsel) have independently moved to strike portions of the Getschow defendants' April 27, 1981 Memorandum Relating to Motion To Clarify (the "Memorandum") filed before Magistrate Cooley. Finally, in response to this Court's request the parties have commented particularly on the proposed retroactive aspect of the Amendment, and have furnished the Court with statements reflecting the approximate amount of fees involved. For the reasons stated in this memorandum opinion and order:

(1) Getschow defendants' objection to the Amendment is denied, and the Amendment is clarified in certain respects.

(2) Economy's objection to the Amendment is sustained.

(3) Lead counsel's motion to strike is granted.

*Objections to the May 28, 1981 Amendment*

On May 16, 1980 Magistrate Cooley entered the Order dealing with various aspects of pretrial management of these actions. Paragraph V established lead counsel for plaintiffs and for defendants and a steering committee for defendants. Lead counsel were directed to engage in three types of coordinating activities and the steering committee in three others, including the briefing and argument of motions and the preparation of joint written interrogatories and requests for the production of documents.

On March 3, 1981 Magistrate Cooley amended Paragraph V to include a provision stating that "it would be unfair and inequitable for only the clients of the named defense counsel to bear the total expenses associated with properly executing . . . [their] functions." Accordingly he directed that "all defendants shall share equally those expenses" effective *nunc pro tunc* May 16, 1980, the date the initial Order was entered. Upon request for clarification Magistrate Cooley entered the Amendment May 28, 1981, superseding the March 3, 1981 amendment. It enumerated the expenses covered by the Order and the procedure by which a defendant could "opt out" of participation in certain efforts by lead counsel or the steering committee (see Appendix A).

Getschow defendants object to the portion of Amended Paragraph V requiring assessment of attorneys' fees and expenses against all defendants.[2] They urge that:

(1) Problems of allocation of such expenses would outweigh any advantages obtained under such an arrangement.

(2) Defendants will improperly be placed in adversarial positions relative to each other.

(3) Such an arrangement frustrates a defendant's rights under Fed.R.Civ.P. ("Rule") 10(c).

Economy objects to Amended Paragraph V to the extent that it covers expenses incurred before the date of the Amendment.[3] Defendants favoring the arrangement[4] urge that:

(1) It facilitates a just apportionment of expenses incurred by lead counsel in activities inevitably benefiting all defendants.

(2) Its opt-out clause (embodied in the second quoted sentence) permits any defendant to refuse to reimburse lead counsel or the steering committee for expenses not benefiting that defendant.

This Court concurs with the statement of the American College of Trial Lawyers pertaining to this subject, contained at page 5 of its *Recommendations on Major Issues Affecting Complex Litigation* (February 27, 1981):

Liaison counsel[5] should not act substantively for a party that has not employed him, and the court should not expect him to do so. The importance of the liaison counsel's position lies in its communication and administrative functions. Liai-

---

**2.** After the Court's initial indication of its ruling during a status hearing, counsel for Windsor Heating Company and Clemens Sharp and counsel for Economy filed short memoranda objecting to the same provisions.

**3.** In response to the Court's invitation for further submissions on the retroactivity question, counsel for Edward Usher and Ideal Heating Company has written a letter asserting the same kind of arguments made by Economy. Though the Usher-Ideal letter might be read more broadly to support the Getschow argument as to *prospective* application of the Amendment, the Court does not find it any more persuasive on that interpretation than the Getschow position.

**4.** There are some 50 defendants in these cases. Only a very small handful have expressed any opposition to the Amendment.

**5.** "Liaison" counsel and "lead" counsel are labels often attached to the performance of different functions. *Compare* Manual For Complex Litigation §§ 1.90 and 1.92 (1978). There lead counsel "are the counsel chosen by the group of parties having a common interest to brief and argue motions . . . [1] to prepare written interrogatories. . . ." and engage in other substantive actions on behalf of the group. Liaison counsel are said to engage primarily in administrative activities designed to streamline processing of the litigation. However, the principle stated above applies with equal force to either arrangement.

son counsel should be reimbursed for time and expense by the parties for whom they are acting, for services rendered and expenses incurred.

Stated differently, liaison (or lead) counsel should not act on behalf of parties not wishing to use their representation, nor conversely should such parties be required to pay for services they do not employ.

Had the Amendment subjected all defendants to assessment without exception, that principle plainly would be violated. But the Amendment allows a defendant to opt out of the reimbursement obligation where lead counsel's substantive actions do not comport with its own wishes. That arrangement may be viewed as providing each defendant the opportunity to employ lead counsel—by acquiescence in their actions—or not to do so by making the requisite notice of disavowal.

One refinement should be understood in applying the Amendment, however. It would be unfair for a defendant to exercise a nominal opt-out while still deriving the full substantive benefit of lead counsel's efforts. That would not abate the free-rider concerns that led to the Amendment in the first instance. Accordingly it should be understood that an opt-out disavowal will insulate a defendant from cost-sharing only where that disavowal results in the defendant's not sharing the consequences of the legal position taken on behalf of the class.

■ Under such circumstances Magistrate Cooley's Order appears both fair and consistent with the discretion to employ or not to employ counsel to which defendants are entitled.[6] As to the possible "apportionment of expense" problems to which the Getschow defendants allude, if they arise the new Magistrate (or this Court) may of course enter further appropriate orders on proper application. In any case such claimed administrative burdens are purely speculative and insufficient to justify reversal of the Amendment.

■ In one respect, though, the Amendment cannot be upheld. Despite the strong equities supporting its retrospective effectiveness, the law is to the contrary. It is familiar doctrine that a *nunc pro tunc* order is not a permissible synonym for retroactivity but rather is limited to current correction of the record to speak an earlier truth: an order made earlier but not formally entered. *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969); *Rardin v. Messick*, 78 F.2d 643, 645 (7th Cir. 1935). Instead then the Court must look for power to assess fees against members of the defendant class. And on that score the American Rule (see *Roadway Express Co. v. Piper*, 447 U.S. 752, 759, 100 S.Ct. 2455, 2460, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975)) bars entry of such an assessment.[7]

In principal part the denial of retroactive reimbursement serves to benefit non-participating class members as free riders. But the Court is also mindful of some force in

6. Previous non-reimbursed actions by lead counsel and the steering committee, in which the Getschow defendants joined, suggest at the very least that the Amendment will result in economies and reflect a just apportionment of expenses.

7. Although scarcely as rewarding as the financial recognition that reimbursement would have meant to his clients, special thanks are due to John B. Simon, Esq., one of the lead counsel. With a keen sense of the proprieties involved, Mr. Simon had simply tendered the Magistrate's recommendation without arguing in its favor (it was of course to his clients' benefit to obtain reimbursement of legal expense but could also be viewed as generating legal business for Mr. Simon and his fellow lead counsel). When directed by the Court to address the legal question of retroactivity Mr. Simon—in the same fashion that has marked the service of lead counsel throughout—provided the Court with a thoughtful analysis of such law as existed. Unfortunately from a perspective of fairness, the authorities establishing exceptions to the American Rule do not embrace retroactivity in the present posture of these cases. This ruling is however without prejudice to reassertion of the request if future developments in these actions demonstrate that lead counsel's efforts have in fact produced the kind of benefits to the class that existing case law has found necessary to support an award of fees.

the argument, advanced on behalf of some class members, that had they known of the potential of being assessed for lead counsel's fees [8] they would have conducted their own handling of the litigation differently. In any case, because of the limitations imposed by existing law the Amendment is hereby modified so as to become effective May 28, 1981, the date of its entry.

### Borg's Motion To Strike Portions of the Getschow Defendants' Memorandum

Lead counsel representing Borg has moved to strike those portions of Section B of the Getschow defendants' Memorandum that state:

(1) Lead counsel directly benefits from controlling the litigation as he sees fit (par. (c)).

(2) Various defendants do not agree with group activities they would finance under the Order (par. (d)).

(3) Various defendants have already acted contrary to the decisions of lead counsel (par. (e)).

Counsel claims those statements are false and constitute "scandalous matter" and should therefore be stricken under Rules 11 and 12(f).

▮ Borg's counsel's motion is granted because the complained-of language may be read as impugning the integrity of lead counsel—as an unfair and inaccurate assertion of unprofessional conduct. Getschow defendants have said that was not their intention, but a fair reading of their statements supports the construction that they improperly charge inappropriate motivations to lead counsel. So that the record may be entirely clear on that score without having to refer to a disclaimer found only in a later-filed separate document, the offending language will be stricken. Getschow defendants are ordered (and given leave) to withdraw their original Memorandum from the file and submit for filing a revised memorandum without the language objected to by Borg, such submission to be made by October 19, 1981.

**8.** It must be remembered that the Order provided for lead counsel but did not hint at the

### Conclusion

Getschow defendants' objections to Magistrate Cooley's May 28, 1981 order are denied. Economy's objection is sustained in that the provision for sharing of expenses is made effective May 28, 1981 rather than May 16, 1980. Borg's counsel's motion to strike portions of Getschow defendants' Memorandum is granted and Getschow defendants are directed to comply with the immediately preceding paragraph of this opinion.

### APPENDIX A

For purposes of this order, the term "total expenses" includes: (a) customary administrative (office-type) expenses; (b) reasonable fees and expenses for attorneys and paralegals engaged in performing administrative functions (telephoning, letter writing, and other similar coordinating activities); and (c) reasonable fees and expenses for attorneys and paralegals engaged in the research and preparation of joint briefs and joint discovery responses that inure to the benefit of all defendants. All defendants will share equally fees and expenses of type (a) and (b). No defendant will be exempt from the obligation to share equally type (c) fees and expenses, unless such defendant, in a formal pleading filed with the court within 7 days of the filing date of a joint brief or joint discovery response, specifically disavows all or part of such joint brief or joint response. If such defendant disavows the whole of such joint brief or joint response, such defendant will not be obliged to share any part of type (c) fees or expenses related thereto. If such defendant disavows only a portion of such joint brief or joint response, such defendant shall share equally the type (c) fees and expenses connected with the undisavowed portion of the joint brief or joint response.

imposition of their fees on the class.