In the Matter of BEAR LAKE WEST, INC., Debtor.

**Bankruptcy No. 81-01419.**

United States Bankruptcy Court, D. Idaho.

Aug. 11, 1983.

**274**

Nelson & Harding, Omaha, Neb., Nemelka, Blakesley & Blakesley, Salt Lake City, Utah, and Johnson & Olson, Pocatello, Idaho, for debtor in possession.

Green, Service, Gasser & Kerl, Pocatello, Idaho, for trustee.

Craig R. Jorgensen, Pocatello, Idaho, for creditors committee.

Manning, Holmes & Winmill, Pocatello, Idaho, for UDI committee.

Hansen, Jones, Maycock & Leta, Salt Lake City, Utah, for J.N. Willmore.

## MEMORANDUM DECISION

M.S. YOUNG, Bankruptcy Judge.

This proceeding is presently before the Court upon the request of a number of professional persons for allowance of administrative expenses under 11 U.S.C. § 503(b). The amounts now requested total over $260,000.00. Additional requests of approximately $65,000 not yet noticed for hearing have been filed. Because such expenses will not only burden the reorganization effort but will fall on assets of the estate as priority debt if the proceeding becomes a liquidation under chapter 7 of the Code, this Court has the duty of examining such requests carefully to determine not only the amount of the allowances requested, but also whether they are allowable at all under the requirements of the Code.

The requests herein addressed fall under § 503(b)(2):

"§ 503. Allowance of administrative expenses.

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including . . .

(2) compensation and reimbursement awarded under section 330 of this title."

Section 330, referred to therein, provides:

"§ 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based upon the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses."

Sections 327 and 1103 both require court approval of employment of such professionals. Allowance of compensation under § 330 must be predicated upon compliance therewith. Section 327(a) states:

"Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

Section 1103(a) provides:

"At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee."

The following parties have submitted requests for § 330 allowances:

Nelson & Harding (as attorneys for debtor in possession)

Green, Service, Gasser & Kerl (as attorneys for trustee)

Craig R. Jorgensen (as attorney for the creditors committee)

Manning, Holmes & Winmill (as attorneys for the UDI committee)

Hansen, Jones, Maycock & Leta (as attorneys for J.N. Willmore)

Nemelka, Blakesley & Blakesley (as attorneys for debtor in possession)

Johnson & Olson (as attorneys for debtor in possession)

Martineau & Co., CPA's (as accountants for debtor in possession)

Edward P. Westra (as appraiser)

Arthur Andersen & Co. (as accountants for debtor in possession)

A review of the Court file in this proceeding establishes that, of the foregoing applicants, this Court approved the employment of the following professional persons under § 327(a):

Nelson & Harding (as counsel for the debtor in possession, by Order filed September 11, 1981)

Arthur Andersen & Co. (as accountants for debtor in possession, by Order filed September 4, 1981)

Green, Service, Gasser & Kerl (as attorneys for trustee, by Order filed September 29, 1982)

and of this professional under § 1103:

Craig R. Jorgensen (as attorney for the creditors committee, by Order filed June 1, 1982, with retroactive effective date of April 4, 1982).

■ I find the requests for allowance of administrative expenses of Green, Service, Gasser & Kerl and of Craig R. Jorgensen reasonable and proper under the criteria established by § 330 and will allow the amounts requested as administrative expense under § 503(b)(2).

■ The applications of Nelson & Harding and Arthur Andersen & Co., in the reduced amounts stipulated in open court are found reasonable and in accord with the statutory requirements, and will be allowed.

The employment of Manning, Holmes and Winmill as counsel for the undivided interest holders' committee was not approved by the Court under § 1103(a). By "Report of Compensation of Counsel from Non-Estate Funds and Request for Nunc Pro Tunc Order and Compensation from Estate" filed June 13, 1983, this firm has requested the Court to approve employment and allow as an administrative expense attorneys' fees and expenses from May 1, 1983 to date. Prior to May 1, fees in the amount of $7,137.00 and costs of $382.31 were paid directly by the UDI committee from funds collected internally for that purpose.

When this committee was appointed under § 1102(a)(2), it was represented to the Court that the "Committee for the Representation of Bear Lake West, Inc. Investors," the moving party and precursor of the UDI Committee, had amassed funds for the compensation of counsel and the payment of expenses, and no request was included therein for court approval of employment of counsel under § 1103 or reflected anticipated later requests for payment from the assets of the estate.

This is the only application presently before the Court which specifically requests *nunc pro tunc* approval of employment thus entitling the professional to seek authorization of compensation under § 330. This practice is of limited value and application. The Bankruptcy Appellate Panel for the Ninth Circuit has stated in *Funsten v. Mosser,* BAP No. NC–82–1327–AsGE (unpublished opinion, June 3, 1983) at p. 3:

"Under § 327, any employment by the trustee or debtor in possession of an attorney must be approved by the court. Furthermore, such approval must be obtained at the outset of such employment, otherwise the policies of ensuring competence, experience and integrity, and thereby the effective administration of the estate, are defeated.

Where there is no compliance with § 327(a) there is no right to compensation for the attorney for the debtor in possession. Under certain circumstances courts have permitted the use of orders *nunc pro*

*tunc* to validate a previous failure to obtain the requisite court approval and obviate an oversight which would otherwise result in infair and inequitable circumstances. 2 Collier on Bankruptcy, ¶ 327.-02 at p. 327–5 (15th Ed.) Although orders *nunc pro tunc* are not forbidden, they are disfavored. *Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir. 1976). See, *In re Johnson,* 21 B.R. 217 (Bkrtcy.D.C.1982)."

In *Johnson,* cited by the Panel, Bankruptcy Judge Whelan wrote that ignorance of the requirement of court approval prior to rendering services provides no excuse for the professional and does not provide a sufficient legal basis for entry of an order of approval *nunc pro tunc,* even though the applicant acts in good faith, the result is harsh, and substantial services may be rendered the debtor in possession. The court did not discuss when such an order would be proper, but did imply that the situation would have to be extraordinary.

In *Laurent Watch,* the Ninth Circuit held that entry of a *nunc pro tunc* order was permissible in a situation where the referee had made the determinations required for appointment prior to the professional's performance of services for which compensation was sought but had not executed a formal order appointing him as counsel for the Chapter XI debtor in possession. The Court held that *Beecher v. Leavenworth State Bank,* 184 F.2d 498 (9th Cir.1950) did not, as the referee and district court had ruled, bar entry of such an order. The Court, however, held only that no absolute bar existed under *Beecher;* it remanded for consideration of whether a *nunc pro tunc* order of appointment *should* be entered. *Supra,* 539 F.2d at 1232.

The Court of Appeals for the Fifth Circuit in *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 8 C.B.C.2d 116, (5th Cir.1983), similarly held that entry of a *nunc pro tunc* order approving employment was possible under the Bankruptcy Court's equitable powers. That Court held:

"We thus find that neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order nunc pro tunc authorizing the employment of an attorney for the debtor in possession, even after the attorney (who *should* have secured prior approval for his retainer) has performed valuable services for the debtor's estate that have increased the common funds available for distribution to the creditors.

In so holding, we decide only the narrow issue that a bankruptcy judge *does* have this discretion, rejecting the present trier's determination that as a matter of law he could never exercise such discretionary power. We do not intend to intimate whether, on remand, he should or should not exercise that discretion. Further, the bankruptcy statute and rules require court approval for employment of an attorney for the debtor's estate and contemplate that such approval will be required in advance of such employment and only after the showing now required by statute. While equitable powers may permit nunc pro tunc appointment in rare or exceptional circumstances, we do not intend by our holding to encourage any general nonobservance of the contemplated preemployment court approval. We hold only that, where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession (many of them as here under the eye of the court itself), the bankruptcy court retains the equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors."

*Supra,* 697 F.2d at 1289 (emphasis in original).

In *In re Eureka Upholstering Co., Inc.,* 48 F.2d 95 (2d Cir.1931), Judge Learned Hand writing for the Court stated in regard to

the rule requiring court approval of the attorney's employment under General Order 44:

> "The order and the rule were passed to control serious abuses and are to be strictly observed; without an order of the court upon full presentation of the relation of the proposed attorney with all other interests involved, not only may he not be retained, but he can recover nothing, no matter how beneficial or how arduous his services." *Id.* at 95.

As noted by the Fifth Circuit in *Triangle Chemicals, supra,* 697 F.2d at 1285, the Third, Sixth and Eighth Circuits and a number of Bankruptcy Courts have similarly embraced the "inflexible" rule disallowing compensation if prior court approval was not obtained. It is true, however, that the Seventh Circuit, some Bankruptcy Courts, and the Ninth Circuit in *Laurent Watch, supra,* have tempered the rule by use of orders *nunc pro tunc.* Note, however, the Fifth Circuit's caveat in regard to these "exceptions". *Supra,* 697 F.2d at 1287, n. 9.

The function of a *nunc pro tunc* order is set forth in *In re Mork,* 19 B.R. 947 (Bkrtcy. D.Minn.1982):

> "The remaining question is whether the designation of a subsequent order as "nunc pro tunc" may accomplish the same objective. I conclude that as here not only absent an order, but absent any communication with the court whether or not resulting in an order, sufficient to apprise the court as to the intended retention and its necessity and terms, the court is without power to undo what has been done. While there may be some confusion in terminology, the—
>
> ' * * * purpose of a nunc pro tunc order is to record a prior but unrecorded act of the court so that the record will truly show the action really had but not truly recorded through inadvertence of mistake. *In other words, it is an order designed to make the record speak the truth and it does not indicate the existence of the power to enter an order to record that which was omitted to be done.* It cannot be made to supply an omission to make an order but only an omission in the record of the order.'
>
> 'While there are many Federal and State authorities dealing with the nunc pro tunc rule, the following decisions are sufficiently illustrative for present purposes: *Application of Andrews,* 175 Neb. 222, 121 N.W.2d 32; *Hampshire Arms Hotel Co. v. Wells,* 210 Minn. 286, 298 N.W. 452; *Sebel Co. v. Hessee,* 10 Cir., 214 F.2d 459. In *"Sebel"* the court held that the latin phrase "nunc pro tunc", with reference to an order, does not involve the equity jurisdiction of the court but is merely descriptive of the inherent power of the court to make its records speak the truth, and *does not indicate existence of a power to enter an order to record that which was omitted to be done.'* See the order in 'Nides', supra. (emphasis in original).
>
> If this case involved a mere failure to record action of the court actually taken, a nunc pro tunc order might have a function to perform. See *Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir. 1976), but absent such prior determination, as indicated in the dissent in that case, the policy of the statutes, orders, and rules do not permit a retrospective grant of authority. See *In the Matter of Schatz Federal Bearings Company, Inc.,* 17 B.R. 780, 8 B.C.D. 912 (Bkrtcy.S.D.N. Y.1982).
>
> The predicament of the accountants in the present case is of course unfortunate and appealing. However this court cannot supply the prior order which the debtor's counsel by inattention failed to obtain." *Id.* at 949.

█ In light of the above authority and the requirements of the statute, I conclude this Court's equitable power to enter such after the fact orders is limited to those situations where all applicable requirements for approval of employment are met and are affirmatively shown by the Court's record as it stands at the time the employment commenced, and where the failure to obtain

an order reflecting that state of affairs and approving the employment was not due to the negligence or error of counsel, unless the Court determines in the exercise of its discretion that a different result is required due to extraordinary circumstances.

■ Under such an analysis, I conclude that the application of Manning, Holmes & Winmill for an order *nunc pro tunc* cannot be entered. Therefore, the request for allowance of $1,022.68 in fees and costs is denied, and the firm must look to its client, and not the estate, for payment thereof.

■ The request for fees by the firm of Nemelka, Blakesley & Blakesley suffers from the same problem; the Court record indicates no order has been entered approving the employment of this firm under § 327(a). Compensation under §§ 330 and 503(b)(2) is therefore foreclosed.

Initially, Nelson & Harding represented the debtor in possession. In May, 1982, however, Mr. Blakesley filed documents with the Court as "co-counsel" for the debtor in possession. Prior to that time, a document was filed by Blakesley as "attorney in fact" for J.N. Willmore. (See "Objection as Creditor or Party in Interest to Proposed Disclosure Statement", filed March 31, 1982). Blakesley also filed, in May, 1982, a "notice of appearance" as co-counsel for the debtor in possession; this, however, clearly does not constitute a request for approval of employment. Similarly, an order entered by the Court admitting Blakesley to practice *pro hac vice* has no relevance to the issue of approval of employment under § 327.

■ On June 23, 1982, application was made to the Court for approval of employment of the firm of Nemelka, Blakesley & Blakesley. A proposed order was provided, but the Court record does not indicate it was ever executed. Not only must counsel apply for approval of employment under § 327, they must assure themselves that such approval has been granted prior to undertaking representation of the debtor in possession. The burden of compliance with the Code and of obtaining an order of approval from the Court is upon counsel; the bare fact that application was made is insufficient. Thus, this request for allowance is denied.

■ Mr. Blakesley filed with the Court, contemporaneously with the above, a "notice of appearance" of the firm of Martineau & Company as accountants for the debtor in possession. The Court by letter advised counsel that this did not comply with § 327 or the rules. An application seeking approval of the firm was later filed, even though employment of a qualified accounting firm, Arthur Andersen & Co., had earlier been approved. The record again reflects no order was ever entered approving the employment of Martineau and Company. The requested compensation is therefore denied.

Johnson & Olson has appeared as local co-counsel for the debtor in possession since early 1982 when Nelson & Harding ceased representation. However, no express approval of the Court was ever obtained for their services. The firm appeared solely as local counsel and did, in fact, obtain the *pro hac vice* admission of Nemelka, Blakesley & Blakesley. This act does not, however, constitute approval of the employment of either Nemelka, Blakesley & Blakesley or of Johnson & Olson as counsel for debtor in possession.

■ I conclude that a separate order of approval of employment of local counsel should not be absolutely required but, rather, in certain circumstances, the right of local counsel to compensation may be dependent upon the approval of employment of primary counsel. The fees and expenses of local counsel in such a situation would be submitted by, and encompassed within the § 330 request of, the approved primary counsel. Here however, the employment of Blakesley's firm was not approved and thus the expenses attributable to retention of local counsel, as are all other expenses, are not allowable.

■ Edward P. Westra, M.A.I., has requested allowance of his fees for appraisal services. The only approval of his employ-

ment as an appraiser occurred at hearing held September 15, 1983, upon the request of the creditors' committee for employment of an appraiser. The Minute Entry of the Court made on that date states:

"The application of the creditors committee for the appointment of appraiser was granted on the following conditions. That the creditors committee use Edward Westra, an appraiser who has heretofore appraised the property, for the purpose of updating his appraisal to a current status as desired by the creditors committee, provided that a fixed fee be determined and submitted to the court for approval and allowance."

The fee allowance requested on behalf of Westra does not comply with the above ruling. Clearly, the $4,500.00 charged for the October 14, 1981 appraisal report is not allowable. Nor would it appear that the $2,400.00 charged for "additional valuations concerning the Willmore reorganization plan in preparation for court testimony" is proper. The exhibit to the fee requests lists a charge of $2,500.00 for "Fee for liquidation analysis in preparation for court testimony". This may refer to work equivalent to that authorized on September 15, but there is no evidence that the Creditors Committee actually employed Westra or that he ever delivered an appraisal to the committee. The exhibit notes that this amount has been paid, though it does not reflect by whom. I therefore disallow any fees at this time without prejudice to Westra to file an amended application for allowance in accord with the Minute Entry of September 15, 1982, if he is able to do so.

The fees requested by Hansen, Jones, Maycock & Leta (and therein the firm of Roe & Fowler) must be disallowed since the request for approval of employment as co-counsel for the debtor in possession was, after notice and hearing, expressly denied by the Court. There is therefore no basis for payment of this firm's compensation from the assets of the estate. Even though this reorganization proceeding floundered until Mr. Leta of the firm was hired by Willmore and took control of that proponent's efforts to obtain a confirmable plan, and though this Court has been im-

pressed by Mr. Leta's expertise, skill, and relationship with the Court and other parties, the Code simply does not authorize payment of attorney's fees from the assets of the estate solely due to such factors. The harsh reality is that employment must be for specified entities and must be approved by the Court, both prerequisites here lacking.

In making the above findings and decisions, this Court holds that they are not allowable administrative claims under § 503(b)(2) against the assets of the estate and are thus not payable on the effective date of the plan under § 1129(a)(9)(A) or as a § 507(a)(1) priority under liquidation.

An order reflecting the above conclusions will be entered contemporaneously herewith.