**In re David R. BROWN, Debtor.**

**Bankruptcy No. 5–82–00437.**

United States Bankruptcy Court, D. Connecticut.

June 1, 1984.

James G. O'Rourke, O'Rourke & Ambrogio, Stratford, Conn., pro se.

Ira B. Charmoy, Levin & Charmoy, Bridgeport, Conn., for debtor in Case No. 5–83–00703.

George A. Vannah, U.S. Bankruptcy Court, Bridgeport, Conn., Estate Administrator.

## MEMORANDUM AND ORDER ON EMPLOYMENT OF ATTORNEY NUNC PRO TUNC AND ORDER TO SHOW CAUSE WHY MONEYS SHOULD NOT BE RETURNED TO BANKRUPTCY ESTATE

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

### BACKGROUND

On April 19, 1982, David R. Brown (debtor) signed a retainer agreement with the law firm of James G. O'Rourke (O'Rourke). Under that agreement, the debtor paid O'Rourke a $5,000.00 retainer and O'Rourke agreed to represent the debtor in

a "Title 11 U.S.C. Chapter 13 proceeding." The agreement contemplated the possibility that the Chapter 13 case "may have to be converted to one under Chapter 11 or Chapter 7." The debtor further agreed "to employ [O'Rourke] to represent him in the sale of Real Property, which fee [would] be in addition to any bankruptcy fees."

In accordance with the retainer agreement, O'Rourke filed a Chapter 13 petition on behalf of the debtor. The Chapter 13 case was ultimately converted to a case under Chapter 11 and thereafter dismissed on March 15, 1983. The debtor then retained new counsel, Ira Charmoy (Charmoy), who filed a new Chapter 11 petition on his behalf on July 20, 1983.

On October 6, 1983, Charmoy conducted a Rule 2004 examination of Attorney Charles Ambrogio of the O'Rourke firm and obtained testimony that the O'Rourke firm did not disclose[1] the entire fee it received from the debtor. It was also determined that O'Rourke had never applied for, nor had he ever received, a court order approving his employment as attorney for the debtor.

On October 19, 1983, more than seven months after the dismissal of the initial Chapter 11 case, O'Rourke filed an Application To Approve Employment Of Attorney, Nunc Pro Tunc. It is noteworthy that that application, which was never signed by the debtor, purports to be "[t]he application of David R. Brown" and alleges that the "debtor in possession prays that the court approve, nunc pro tunc, its (sic) employment of the Law Office of James G. O'Rourke. . . ." In fact there is no indication that the debtor ever knew of its existence until after the application was scheduled for a hearing.

---

1. Bankr.Rule 219(b), which is applicable here, *see* note 3 *infra*, provides:

   (b) *Disclosure of Compensation Paid or Promised to Attorney for Bankrupt.* Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services ren-

dered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of his compensation with a member or regular associate of his law firm shall not be required.

The Estate Administrator, made aware of the application by the clerk's office, contacted the O'Rourke firm and learned that the firm had received funds which had not been approved by this court. On October 26, 1983, the court signed an Order To Show Cause Why Moneys Ought Not Be Turned Over To The Bankruptcy Estate which, together with O'Rourke's Application To Approve Employment Of An Attorney, Nunc Pro Tunc, is now before the court.

## II.

## DISCUSSION

■ Code § 327(a) authorizes a trustee[2] with court approval to employ attorneys and other professionals who "... do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [Title 11]." Bankruptcy Rule 215(a), which was applicable at the time O'Rourke rendered services to the debtor,[3] also requires a court order for the employment of an attorney.[4] Code § 330(a) provides, *inter alia,* for the compensation of attorneys appointed with court approval under Code

§ 327(a), and Rule 219(a) requires a person, seeking compensation for services, or reimbursement of necessary expenses from the estate, to file an application with the court. Reading these sections and rules together in the context of this proceeding, it is apparent that in order to be eligible for counsel fees from an estate an application seeking court approval for the appointment of an attorney must be filed and an order obtained in advance of such employment.

It is O'Rourke's contention that the Affidavit of Proposed Attorney he filed on October 19, 1983 in support of his application for employment as attorney *nunc pro tunc,* satisfied the rule requiring a statement that he was a disinterested person and that had his application been timely filed, he would have been authorized to serve as the debtor's attorney. O'Rourke claims that his failure to timely file an application for court approval of employment was due to excusable neglect, and he urges this court, as a court of equity, to ratify his employment and permit him to retain a fee for services rendered. O'Rourke also claims that since an application for his employment as the debtor's attorney in the Chapter 13 case was not necessary[5] and since he considered the con-

---

**2.** Code § 327(a) provides for the employment of an attorney by a trustee with court approval. Code § 1107(a) extends that authority to a debtor in possession.

**3.** An April 25, 1983 order of the Supreme Court provided that the new Bankruptcy Rules were to become effective on August 1, 1983 and were to apply "to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work an injustice, in which event the former procedure applies." Since O'Rourke was on notice of old Bankruptcy Rule 215(a), that standard will be applied here. It should, however, be observed that new Bankruptcy Rule 2014(a) also requires an application for and an order approving the appointment of attorneys.

**4.** Rule 215(a) provides:
   (a) *Conditions of Employment of Attorneys and Accountants.* No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, *stating the specific facts showing the*

necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's or accountant's connections with the bankrupt, the creditors, or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.

**5.** Applications by a trustee for employment of an attorney are required under Code § 327(a) and old Bankruptcy Rule 215(a). The Code sections of Chapter 13 do not extend that obliga-

verted Chapter 11 case to be a continuation of the Chapter 13 case, he was unaware that approval of his employment as attorney was necessary. Finally, O'Rourke claims that his fee agreement with the debtor antedated bankruptcy and included services for nonbankruptcy matters and that he should be entitled to retain his fee for the nonbankruptcy services he rendered.

It is well settled in this Circuit that generally compensation will be denied to an attorney for a trustee or debtor in possession who acted without complying with Rule 215(a) or its predecessor, General Order 44 [6]. *Matter of Futronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981) *cert. denied* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *see In re Progress Lektro Shave Corporation*, 117 F.2d 602, 604 (2d Cir. 1941); *In re Eureka Upholstering Co.*, 48 F.2d 95 (2d Cir.1931); *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 991 (2d Cir.1931); *In re H.L. Stratton, Inc.*, 51 F.2d 984, 987 (2d Cir.1931) *cert. denied sub nom. Jonas & Neuburger v. General Motors Acc. Corp.*, 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576 (1932).

As the court in *In re Rogers-Pyatt Shellac Co.*, supra 51 F.2d at 992, observed, construing General Order 44 which as noted is the substantive equivalent of Rule 215(a):

[t]he only argument in favor of a nunc pro tunc order is that of hardship. But the hardship is of the appellants' own making. The rule is clear, and they are charged with knowledge of it. To give heed to the argument of hardship in such circumstances would nullify the requirement that the affidavit be filed before the appointment is made. One reason for that requirement is obviously to allow the court to consider the grounds advanced for selecting counsel presump-

tively disqualified by representation of the petitioning creditors, unaffected by the emotional pressure which inevitably arises in their favor after the services have been rendered.... If the rule is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally. Impliedly it forbids a nunc pro tunc order to validate for purposes of compensation an appointment which could not properly have been made had the required affidavit been filed.

The requirement of obtaining an order was established to avoid the problem of having the court rule upon the merits of the claims for services *post facto* rather than having the court initially decide whether such services were required. *In re New York Investors, Inc.*, 130 F.2d 90, 91–92 (2d Cir.1942). In *Connelly v. Hancock, Dorr, Ryan & Shore*, 195 F.2d 864, 868 (2d Cir.1952), the court relaxed its *nunc pro tunc* standards under circumstances, not present here, where the relevant facts in connection with the appointment of the attorneys were "generally disclosed to the judge ... [and] at any rate they were soon disclosed in a formal petition...." Thus it appears that *nunc pro tunc* applications are to be denied in this Circuit absent hardship beyond the control of the proposed attorney.

O'Rourke, apparently recognizing the narrow grounds in this Circuit for appointment *nunc pro tunc*, claims that his failure to file the required application in advance was due to excusable neglect. O'Rourke's argument is unsupported by any factors that rise to the level of excusable neglect as those words of art have been defined by this court and the Court of Appeals in this Circuit.

In *In re Manning*, 4 B.C.D. 304, 305 (Bkrtcy.D.Conn.1979), the court defined ex-

tion to Chapter 13 debtors. Compare Code § 1107(a).

**6.** Rule 215(a) superceded General Order 44 which provided that "no attorney for a receiver or a trustee shall be appointed except upon the order of the court, which shall be granted only

upon the petition of the ... trustee, stating the name, ... the reasons for his selection, and the necessity for employing counsel at all; and [the attorney shall file an affidavit showing no adverse interest to that of the trustee or creditors].

cusable neglect as "... the failure to timely perform a duty due to circumstances beyond the reasonable control of the person whose duty it was to perform." In *In re Martin-Trigona*, 11 B.R. 414, 416 (1981), this court, quoting *Fase v. Seafarers Welfare and Pension Plan*, 574 F.2d 72, 76 (2d Cir.1978), discussed the meaning of excusable neglect in a different context as follows:

> The question thus becomes "whether there was excusable neglect entitling appellants, in the district court's discretion, to an extension of time ...." The answer, of course, depends on the meaning given to the phrase "excusable neglect". In this regard, we believe that the determination of "whether neglect is excusable depends on the facts of the case at hand and ... should be determined on the basis of the 'common-sense meaning of the two simple words applied to the facts which are developed.'" This common sense approach is to be coupled with an awareness that the "excusable neglect" standard is intended to be a "strict one", that the party requesting the extension must make a clear showing that the circumstances causing the delay were unique and that the neglect was excusable, and, finally, that "courts should sanction deviations from the letter of the rules only on the most compelling showing that [the purposes of the Rules] are served".

*See also In re Diana B. Johnson*, 35 B.R. 79 (Bkrtcy.D.Conn.1983).

The filing of an application for authorization to employ an attorney was not beyond O'Rourke's control. The failure to file that application was the result of ordinary negligence not excusable neglect.

■ In the alternative, O'Rourke argues that an application under Rule 215(a) was not necessary because the Chapter 11 case in which he rendered the services was a mere continuation of the Chapter 13 case from which it was converted. O'Rourke's claim fails for lack of support from any rule of law or logic. Chapter 11 is a separate and distinct chapter governed by significantly different Code sections than Chapter 13. Presumably O'Rourke converted the case from Chapter 13 to Chapter 11 because of those differences. Whereas a Chapter 13 debtor maintains control over property of the estate and the Chapter 13 trustee serves a limited administrative function, *see In re Carr*, 34 B.R. 653, 655, 11 B.C.D. 178, 179 (Bkrtcy.D.Conn.1983), a Chapter 11 trustee is responsible for all of the property of the estate. Under Code § 1107, a debtor in possession has, subject to limitations not relevant here, all of the rights, powers and duties of a trustee. It is therefore apparent from a reading of Code §§ 1107 and 327(a) with Rule 215(a) that a trustee, or a debtor in possession in a case under Chapter 11, may only employ an attorney, with the approval of the court, upon an application filed for that purpose.

O'Rourke argues that he had a prepetition executory contract with the debtor to represent him in various nonbankruptcy matters. It appears, however, that the retainer agreement was executed on April 19, 1982, one day before the Chapter 13 bankruptcy petition was filed, and provided for a retainer of $5,000.00 for fees and costs in connection with bankruptcy matters. The agreement thereafter provided for retention of O'Rourke "... to represent [the debtor] in the sale of Real Property, which fee will be *in addition* to any bankruptcy fees." (Emphasis added)

■ An attorney may be entitled to keep a fee for services he renders in nonbankruptcy matters so long as the fee is not paid out of the estate, as, for example, when the attorney represents a party and bankruptcy intervenes. *See e.g. Matter of Innkeepers of New Castle, Inc.*, 671 F.2d 221 (7th Cir.1982). Here, however, the retainer agreement related to post petition activities. Moreover, there is considerable confusion created by discrepancies between the retainer agreement, O'Rourke's Rule 219(b) disclosure statement, the law firm's records and the testimony of one of its attorneys during a Rule 2004 examination. It appears that while the agreement called for a $5,000.00 retainer for bankruptcy

matters, and that $5,000.00 was paid by the debtor to O'Rourke on June 7, 1982,[7] the law firm only acknowledged $3,000.00 on its August 30, 1982 disclosure statement, and its records show that in June only $1,500.00 was credited as a fee in the Chapter 13 case. The confusion created by those inconsistencies should not be charged to the debtor's estate. The agreement called for $5,000.00 to be paid for bankruptcy matters, $5,000.00 was paid, and that amount is found to be the attorney's fee paid from the debtor's estate for bankruptcy related services, O'Rourke's internal accounting system to the contrary notwithstanding.

It is unclear what, if any, fees were paid to O'Rourke for nonbankruptcy matters. O'Rourke's records reveal the receipt of various funds and disbursements in addition to the $5,000.00 bankruptcy fee retainer. O'Rourke received four checks in the amount of $450.00 each and a check for $199.42 as rental payments on properties owned by the debtor, and O'Rourke made disbursements in the amounts of $200.00 for filing fees, $31.50 for certified copies of attachments, $150.00 for a title search, $450.00 for a fee to the law firm for negotiating a real estate rental and $800.00 to the debtor to allow him to make business purchases. The records further disclosed $367.92 as a trust balance.[8]

Since O'Rourke was negotiating a lease of property of the estate during the pendency of the initial Chapter 11 case,[9] any professional services he rendered in that regard would be bankruptcy related services and would require prior approval by this court pursuant to Rule 215(a).

### III.

### ORDER

It is accordingly

ORDERED that the Application To Approve Employment Nunc Pro Tunc is denied; and it is further

ORDERED that O'Rourke turn over to the bankruptcy estate of David R. Brown all fees he received from the debtor without prejudice to O'Rourke filing an application under Rule 219(a), now Rule 2016(a), for compensation and reimbursement for services rendered and expenses incurred during the Chapter 13 case.[10]

---

7. Memorandum of James G. O'Rourke, Esq., December 9, 1983, Exhibit 3; Application *Nunc Pro Tunc* filed by James G. O'Rourke, Esq., December 9, 1983, Exhibits A and B.

8. *Id.*

9. The debtor's Chapter 13 case was converted to a case under Chapter 11 on July 7, 1982. The

$450.00 fee for negotiating a real estate rental was paid on February 23, 1983.

10. Rule 219(a), requires an application for compensation to be filed by any "... person seeking compensation for services, or reimbursement of necessary expenses, from the estate...."