**In re KROEGER PROPERTIES AND DEVELOPMENT, INC., Debtor.**

**Appeal of Francis W. ZILAFF, Real Party in Interest.**

**BAP No. EC–85–1056–MEAs.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Sept. 20, 1985.

Decided Jan. 21, 1986.

Francis W. Zilaff, Zilaff & Zilaff, Sacramento, Cal., for appellant.

Before MEYERS, ELLIOTT and ASHLAND, Bankruptcy Judges.

OPINION

MEYERS, Bankruptcy Judge:

This is an appeal from a decision denying a *nunc pro tunc* order of appointment as counsel for the debtor in possession. Mr. Zilaff had served in fact as counsel for the debtor in possession for two years before he requested court approval. The reason given for this delay was simple neglect. None of the creditors nor the debtor in possession objected to Mr. Zilaff's request for a *nunc pro tunc* order and it appears that when the estate is fully administered

it will be solvent. While the trial court approved Mr. Zilaff's appointment, it refused to provide that it be *nunc pro tunc* as of the date of the petition. We AFFIRM.

## A. *TRIAL COURT'S DISCRETION TO ISSUE NUNC PRO TUNC ORDERS.*

The Ninth Circuit found under the Bankruptcy Act that a bankruptcy court had the power to issue a *nunc pro tunc* order of appointment. *Matter of Laurent Watch Co., Inc.*, 539 F.2d 1231 (9th Cir.1976).[1] The Seventh Circuit reached a similar decision in *Stolkin v. Nachman*, 472 F.2d 222, 227 (7th Cir.1973). We see nothing in the Bankruptcy Code that would change this result. Indeed, the Fifth Circuit, in *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, 1284 (5th Cir.1983), held that bankruptcy courts under the Code continue to retain the power to issue *nunc pro tunc* orders of appointment.

However, this issue has generated considerable controversy. At least four circuits have held either that such power did not exist, or that there is a *per se* rule against granting *nunc pro tunc* order to approve employment of professionals. *See Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2nd Cir.1981); *In re Calpa Products Co.*, 411 F.2d 1373, 1374 (3d Cir.1969); *Grochenour v. Cleveland Terminals Bldg. Co.*, 142 F.2d 991, 995 (6th Cir.1944), *cert. denied*, 323 U.S. 767, 65 S.Ct. 120, 89 L.Ed. 614 (1944); and *Albers v. Dickinson*, 127 F.2d 957, 961 (8th Cir.1942).

The Ninth Circuit in *Laurent Watch,* did not establish a standard for the issuance or denial of *nunc pro tunc* orders. However, the Fifth Circuit Court of Appeals has held that while a bankruptcy court can issue a *nunc pro tunc* order under exceptional circumstances, it did not intend to encourage any general non-observance of the con-

templated preemployment court approval. *Matter of Triangle Chemical, Inc., supra,* 697 F.2d at 1289.

■ It is clear that there is no *right* to a *nunc pro tunc* order. *In re Wolsky,* 35 B.R. 481, 482 (N.Dakota 1983); *In re Johnson,* 21 B.R. 217, 218 (D.C.1982). The attorney for the debtor in possession has a right to compensation only when he has complied with the provisions of Section 327(a) of the Code. Both Section 327 and Bankruptcy Rule 2014 explicitly require attorneys to seek the approval of the court before they commence employment for the estate.

Several courts have refused to find that neglect or mere inadvertence by an attorney to file for Section 327 approval constitutes an extraordinary situation that would justify retroactive approval. *In re Johnson, supra,* 21 B.R. at 218; *In re Brown,* 40 B.R. 728, 732 (Conn.1984); *In re BSJ Tower Associates,* 35 B.R. 131, 134 (Puerto Rico 1983); and *Matter of Bear Lake West, Inc.,* 32 B.R. 272, 277–78 (Idaho 1983).

In the Ninth Circuit, the standard to review a bankruptcy court's award of attorneys fees is whether the court abused its discretion or erroneously applied the law. *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985); *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 422 (9th Cir. 1983). In the instant case the trial judge recognized that while a *nunc pro tunc* order would be appropriate under *Laurent Watch* in a proper case, he found, on policy grounds, that a late application based on negligence alone should not be approved. This was apparently in reaction to recurring problems in the Eastern District of California in regard to attorneys failing to apply for timely appointment. *See In re Liddell,* 46 B.R. 682, 684 (E.Cal.1985).

Allowing a judge to limit *nunc pro tunc* orders to extraordinary circumstances will

---

**1.** The Panel notes that the use of *nunc pro tunc* orders to grant retroactive effect to untimely applications is an expansion of the limited role previously assigned to this device. Traditionally that Latin phrase was merely descriptive of the inherent power of any court to make its

records speak the truth—to record that which was actually done but omitted to be recorded. *See W.F. Sebel Co. v. Hessee,* 214 F.2d 459, 462 (10th Cir.1954); *Board of Ed. of Evanston TP v. Admiral Heating,* 525 F.Supp. 165, 168 (N.Ill. 1981).

deter attorneys from general non-observance of Section 327.[2]  Otherwise, any attorney who is qualified to serve as a counsel for a debtor in possession could ignore the requirement that a court order be obtained before commencing work.  Since professionals are charged with knowledge of the law, there is no unjust hardship in requiring them to observe the strict requirements of Section 327.  *In re New England Fish Co.*, 33 B.R. 413, 418 (W.Wash.1983).

█  In determining the appropriateness of a *nunc pro tunc* application, the trial court should conduct an analysis such as that found in *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (M.Tenn. 1983).  Only when an attorney has satisfied these relevant considerations will the Panel question the trial court's exercise of its virtually unfettered discretion in dealing with such applications.  Here Mr. Zilaff failed to provide a satisfactory explanation for his untimely application.  We hold that it is not an abuse of discretion for the trial judge to refuse to award attorney fees where the only excuse for lateness is negligence.[3]

### B.  *SECTION 327 CONSTITUTIONAL.*

Mr. Zilaff argues that 11 U.S.C. § 327(a) is unconstitutional as a denial of both equal protection of the law under the Fourteenth Amendment and as a denial of due process under the Fifth Amendment.  Section 327 does distinguish between professionals who have followed Section 327 and those who have not, even if the latter are otherwise qualified for appointment.  Mr. Zilaff claims that this distinction is arbitrary.

█  This argument must fail for the equal protection clause of the Fourteenth Amendment does not apply to federal statutes.  *Detroit Bank v. United States*, 317

U.S. 329, 337, 63 S.Ct. 297, 301, 87 L.Ed. 304 (1942); *Adams v. Howerton*, 673 F.2d 1036, 1041 fn. 3 (9th Cir.1982).  To the extent that an equal protection claim can be raised against a federal statute, it is only through the equal protection component to the Fifth Amendment's due process clause and merges into the due process analysis generally.

Mr. Zilaff's claim that Section 327 arbitrarily discriminates between professionals is without substance.  The constitutionality of a statute, absent any claim of suspect classification, is judged by the rationality test—is the means used rationally related to any legitimate purpose.  *Barry v. Barchi*, 443 U.S. 55, 67, 99 S.Ct. 2642, 2650–51, 61 L.Ed.2d 365 (1979); *Walters v. National Association of Radiation Survivors*, —— U.S. ——, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985).

█  Section 327 allows a bankruptcy court to determine prior to the employment of an attorney whether there is any conflict of interest by that attorney, whether the attorney is competent and whether his services are needed or are duplicative.  It, thus, allows the court some control over costs before they are incurred.  To hold that professionals can claim as of right payment for services already rendered forces the court to make the same ex post facto determination that Section 327 was enacted to prevent.  We hold that the benefits sought to be obtained by Congress are rationally related to the requirement that a court order be obtained by an attorney before commencing employment.

The order is AFFIRMED.

ELLIOTT, Bankruptcy Judge, concurring and dissenting:

I concur in the result, but write to express disagreement with the majority's ap-

---

**2.**  Apparently only one district court has held that refusal to issue a *nunc pro tunc* order solely on the grounds of lack of timeliness is an abuse of discretion.  *In re King Electric Company, Inc.*, 19 B.R. 660 (E.D.Va.1982).  No circuit court has so held.

**3.**  The denial of a *nunc pro tunc* order does not mean that Mr. Zilaff cannot be compensated by

his client for work done prior to his appointment, when the debtor is revested with any surplus assets after the estate emerges from bankruptcy.  The Panel notes that the Code now encourages the payment of any obligation after a discharge has been obtained.  11 U.S.C. § 524(f).

parent approval of cases such as *In re Triangle Chemical, Inc.*, 697 F.2d 1280 (5th Cir.1983) and *In re Twinton Properties Partnership*, 27 B.R. 817 (Bankr.M.D. Tenn.1983) regarding the employment of professionals under 11 U.S.C. § 327(a). I favor the "bright line" rule enunciated by Judge Woodward in *In re Liddell*, 46 B.R. 682 (Bankr.E.D.Cal.1985), i.e. no prior approval of employment—no compensation. That rule comports with the Ninth Circuit's decision in *Beecher v. Leavenworth State Bank*, 184 F.2d 498 (9th Cir.1950), which interpreted former General Order 44. Former General Order 44's requirements regarding the employment of attorneys have been carried over to the present day. They exist now in the form of 11 U.S.C. § 327(a) and Bankruptcy Rule 2014 which apply to all types of professionals assisting the trustee or debtor in possession in performing its duties under Title 11.

I also suggest that the indiscriminate use of the term *nunc pro tunc* has led to the growing confusion reflected by the cases in this area.

> The function of an order nunc pro tunc is to record an order actually made, which, through some oversight or inadvertence, was never entered on the records of the court, or which was incorrectly entered. An order nunc pro tunc cannot do more than supply a record of something that was actually done at the time to which it is retroactive.

56 Am.Jur.2d *Motions, Rules, and Orders* § 44 (1971) (footnotes omitted); *accord W.F. Sebel Co. v. Hessee*, 214 F.2d 459 (10th Cir.1954); *A.B.C. Packard Inc. v. General Motors*, 275 F.2d 63 (9th Cir.1960); *In re Call*, 36 B.R. 374 (S.D.Ohio 1984); 60 C.J.S. *Motions and Orders* §§ 57, 59(2) (1969).

The Ninth Circuit remanded for consideration of the entry of a *nunc pro tunc* order approving the employment of a professional in *In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976). However, that decision does not support an expansion of the traditional remedial function of a *nunc pro tunc* order. The majority in *Laurent Watch* noted that "[t]he record in this case

discloses that the referee made the determinations required by General Order 44 before appellant performed the services for which he seeks compensation." Thus entry of a *nunc pro tunc* order may have been appropriate in those circumstances. When a *nunc pro tunc* is proper, the court will in fact have given its prior approval to the professional's employment.

Cases like *Triangle Chemicals* and *Twinton Properties Partnership* which permit *nunc pro tunc* approval of professional employment in the absence of a prior unentered or incorrectly entered order to that effect are wrong. They exceed the narrowly tailored function of a *nunc pro tunc* order and subvert the prior approval requirement of 11 U.S.C. § 327(a). Careless use of language is no substitute for incisive analysis and will lead, as in this area, to muddled law.

I agree with the trial court's decision to deny a *nunc pro tunc* order simply because no unentered or incorrectly entered order approving Zilaff's employment was ever made.