ALBERS et al. v. DICKINSON et al.

In re MORGAN.

In re MUNICIPAL GAS CO.

In re CHEROKEE PUBLIC SERVICE CO.
No. 12040.

Circuit Court of Appeals, Eighth Circuit.
April 29, 1942.

Arthur L. Adams, of Jonesboro, Ark., and D. D. Panich, of Little Rock, Ark. (J. W. House, of Little Rock, Ark., on the brief), for appellants.

A. S. Buzbee, of Little Rock, Ark. (Philip McNemer, Thomas S. Buzbee, H. T. Harrison, Edward L. Wright, and John M. Harrison, all of Little Rock, Ark., on the brief), for appellees.

Before THOMAS and JOHNSEN, Circuit Judges, and REEVES, District Judge.

JOHNSEN, Circuit Judge.

The questions presented arise out of an attempt to surcharge the final accounts of a trustee in bankruptcy. A Master, to whom the matter was referred, recommended that no surcharges be made, and the District Court approved and adopted the Master's report.

The accounts of the trusteeships of two bankrupt corporations are involved—Municipal Gas Company and Cherokee Public Service Company. Municipal Gas Company was engaged in distributing gas in the city of Muskogee, Oklahoma. The principal business of Cherokee Public Service Company was the piping and selling of natural gas to Municipal Gas Company, from some wells of doubtful sufficiency in Wagoner County, Oklahoma.

Both corporations were part of the general enterprises of S. R. Morgan, an Arkansas promoter. They went into voluntary bankruptcy in 1932. Because of their interdependent operations, W. D. Dickinson was appointed trustee of the two estates. The Referee permitted Dickinson to continue the operations of both corporations until 1938, when the District Court ordered the estates consolidated with the trusteeships of several other of Morgan's corporations and directed Dickinson to file his final accounts.

The receiver of Chicago Bank of Commerce, who had a beneficial interest in the Municipal Gas Company estate, and the trustee of the estate of S. R. Morgan, also in bankruptcy, who had a beneficial interest in both the Municipal Gas Company and Cherokee Public Service Company estates, filed petitions to surcharge Dickinson's respective accounts. By agreement, the petitions in both estates were consolidated for hearing, and the appeals in both estates have similarly been consolidated here.

**1.** The first contention is that Dickinson's compensation as operating trustee could not be computed in any manner upon disbursements made by him for business expenses, but only upon such profits, if any, as his operations might have contributed to the estates. The question here is controlled by section 48, sub. e, of the Bankruptcy Act, 36 Stat. 840, 11 U.S.C.A. § 76, sub. e, which provides that "Where the business is conducted by trustees * * * the court may allow such officers additional compensation for such services by way of commissions upon the moneys disbursed or turned over to any person, including lien holders, by them * * *", such commissions, however, not to exceed certain maximum percentages specified in the statute. The Chandler Act of 1938, 52 Stat. 861, 11 U.S.C.A. § 76, sub. c(2), provides that "Trustees who conduct the business of the bankrupts * * * shall receive such amount as may be allowed by the court, but in no event to exceed twice the maximum allowance" authorized by the Act for an ordinary trustee. This provision, however, was not in effect at the time here involved. We are

of the opinion that under section 48, sub. e, as it then existed, the court was authorized to allow compensation to an operating trustee, computed upon the disbursements made by him for business expenses and not simply upon the profits resulting to the estate from his operation, such allowance, however, to be equivalent only to a reasonable amount for the services performed and in no event, of course, to be in excess of the percentages fixed in the statute. 2 Collier on Bankruptcy, 14th Ed., § 48.08; In re Morris Bros., D.C. Or., 8 F.2d 629.[1] See also In re Hart & Co., D.C.Hawaii, 17 A.B.R. 480; In re Wallace, D.C.Okl., 14 F.2d 534, 537; In re Pequod Brewing Co., D.C.N.Y., 18 A.B. R. 352. If the rule were as appellants contend, there might be situations in which the court would be prevented or at least seriously handicapped in continuing the temporary operation of some necessary business, such as a public utility, because of its inability to provide operating compensation. In the present case, the court did not allow compensation equivalent to the amount of the maximum percentage under the statute upon all disbursements which he had made, and the attack of appellants here is not upon the reasonableness of the amounts, as such, which the trustee has received, but rather upon the right to allow operating compensation at all upon anything except the measure of profits which the trustee's operations shall have contributed to the estates.

█ 2. The further contention is made that the trustee's accounts ought nevertheless to be surcharged with all fees which he has collected, because he failed at the time to follow the requirements of General Order 42, as then in force, 11 U.S.C.A. following section 53, in their allowance. General Order 42, as it then existed, required that, in the allowance of trustee's fees, the trustee should file with the referee a petition for compensation, under oath, setting forth a full and detailed statement of the services performed and the amount claimed therefor, and that the petition should be heard only after notice to creditors. Here the trustee made compensation payments to himself, without petition and notice, but upon checks countersigned by the referee. Such payments were, of course, irregular and criticizable as against both the trustee and the referee,

but, on final account, after the services have been fully performed and those beneficially interested in the estates have been given the opportunity for full examination and hearing, this previous irregularity in making payments does not require the inexorable forfeiting of all right to compensation for the services which have been performed. See In re Wallace, D.C.Okl., 14 F.2d 534, 537.

█ 3. Appellants seek to surcharge the trustee's account with the sum of $349.04 paid to Dickinson & White, Inc., for engineering services rendered the Municipal Gas Company estate. The contention is that this payment was violative of section 72 of the Bankruptcy Act, 36 Stat. 842, 11 U.S.C.A. § 112, which provides that no trustee "shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this title". Dickinson & White, Inc. was composed of the trustee Dickinson and Leonard White, operating as a corporation. White testified that "Mr. Dickinson and I do not work for the corporation on a salary. We merely divide what there is left after expenses are paid." He further testified that the engineering work here involved was done by one of the firm's employees at an expense to Dickinson & White, Inc. of $200. This apparently left the sum of $149.04 received from the Municipal Gas Company estate to be divided directly between White and Dickinson. While Dickinson & White, Inc. was in form a corporation, it was, as to the division of the $149.04 profit received from the bankrupt estate, in practical effect a partnership, because of its manner of operation and the immediate personal relationships involved, and to permit Dickinson to retain the $74.52 thus received by him personally would under the circumstances be violative of the spirit of section 72 of the Act. See 1 Perry on Trusts, 2d Ed., § 432; 2 Scott on Trusts, § 170.22; Restatement, Trusts, § 170n; In re Webster Loose Leaf Filing Co., D.C.N.J., 252 F. 959; In re George Halbert Co., 2 Cir., 134 F. 236, 237. Dickinson's account as trustee of Municipal Gas Company should accordingly be surcharged with the $74.52 which he has directly received for the engineer-

---

[1] Compare 6 Remington on Bankruptcy, Fourth Edition, § 2756 and In re Higgin Mfg. Co., D.C.Ky., 19 F.Supp. 120, where a contrary view is taken.

ing services rendered by Dickinson & White, Inc. to the bankrupt estate.

4. It is contended that Dickinson's accounts should be surcharged with $2,855.85 in the Municipal Gas Company estate and $5,649.67 in the Cherokee Public Service Company estate, for attorney's fees paid without compliance with General Orders 42 and 44, 11 U.S.C.A. following section 53, as then in force. Order 44, as then in force, 288 U.S. 635, does not permit the appointment of any attorney for a trustee except upon the order of the court, granted only upon a verified petition of the trustee, "stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other parties to the proceedings, and their respective attorneys". Order 42 requires that every attorney seeking an allowance of compensation from a bankrupt estate for services rendered must file with the referee a petition under oath, detailing the services and the amount claimed therefor, together with an affidavit that no agreement has been made, directly or indirectly, and that no understanding exists, for a division of fees with the trustee or the bankrupt or any attorney for them. The rule further provides that "In the absence of such petition and affidavit no allowance of compensation shall be made". These rules contemplate and require that, in order to permit the payment of any attorney's fees out of a bankrupt estate, as part of its administration expenses, there must be a verified petition on the part of the trustee, an order of appointment, a petition for allowance of compensation by such appointed attorney together with the prescribed affidavit negativing the possibility of any improper fee division, as well as a notice to creditors. Without a full compliance with these requirements, the trustee has no right to make any payment of attorney's fees out of the bankrupt estate; the referee is without authority to approve any payments which the trustee has thus made; and no attorney can legally receive or retain any such payments out of the estate for services which he may have rendered. In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d 602; In re Rogers-Pyatt Shellac Co., 2 Cir., 51 F.2d 988; In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95. The results may be drastic, as they no doubt will seem in the present case, but there is no way for the trustee, the referee or any attorney to avoid or thwart compliance with the requirements which the Supreme Court has prescribed as a matter of sound and necessary policy. The attorneys' fees here involved were for services of local counsel in Oklahoma which the trustee apparently thought would be more convenient and economical than to have the matters looked after by the attorney at Little Rock, Arkansas, who had been regularly appointed to represent the estates. The accounts of the trustee will have to be surcharged in each estate with the amounts of the improper attorneys' fees payments thus made.

5. A further surcharge of $250 is sought in each estate for a loan which Dickinson authorized the office manager of each bankrupt corporation to make to M. B. Morgan. Morgan, who was a brother of S. R. Morgan, was employed as general manager of the two corporations, and Dickinson's excuse for authorizing the loans was that Morgan "was having difficulty with the bank about his home" and "I wanted him in Oklahoma and it took $500 to keep the bank off for a few months". The loans were made in 1932 and, despite the fact that Morgan was paid a salary of $250 to $350 a month by the two bankrupt estates, the advances were never deducted from the payments made to him. When Morgan's connection with the bankrupt estates was terminated in 1936, Dickinson took over an oil drilling rig belonging to Morgan, which he testified at the hearing in this proceeding was worth more than $500. The Master and the District Court took the view that, on the basis of Dickinson's testimony, there would be no actual loss to the estates and that there was no reason therefore to surcharge his accounts. The loans to Morgan were illegal and could not have been authorized by the referee, even if he had been requested to do so. They were never repaid. These facts alone are sufficient to require that Dickinson's accounts be surcharged. It does not appear that the estates were in need of or were intending to purchase an oil drilling rig at the time it was taken over. They cannot be required to accept it in legal satisfaction of Dickinson's absolute liability for making the loans. The rig should be worth as much to Dickinson as

to the estates, but, however that may be, he will not be permitted to unload it on the bankrupt corporations in joint ownership, in order to discharge his absolute obligation to restore the cash which was taken from the estates. His accounts will accordingly be surcharged with the $250 loaned to M. B. Morgan from each estate.

6. It is contended that Dickinson, as trustee of Cherokee Public Service Company, should be surcharged with $2,588.52, which the estate was obliged to pay as the result of Dickinson's efforts to obtain a reversal, in the courts of Oklahoma, of a judgment recovered against the corporation prior to bankruptcy, and his efforts to prevent the collection of the judgment by proceedings in the federal courts after it had been affirmed by the Oklahoma courts. In all of this, Dickinson was simply following the recommendations of his attorney as to the proper course of action in a legal matter, and the fact that the attorney may have erred in his judgment in undertaking to carry on the litigation can not equitably be allowed, under the circumstances here, to cast the burden of the expenses or losses of the litigation upon the trustee's shoulders.

7. It is sought to surcharge the trustee's accounts with all the earning losses of his operations. In view of the continued accumulation and extent of the losses, it is somewhat difficult to see the justification for these estates having been permitted to be operated for more than six years in an ordinary bankruptcy. Since it appears, however, that those having the beneficial interests in the estates have consented, even after six years, to the consolidation of the trusteeships of the several Morgan corporations, and the apparent further operation of the two estates here involved, there may be reasons, which cannot be determined from the record, why the operations should have been permitted for such an unusually extended period. Under the circumstances, and since most of the operation losses appear to have been due to the depreciating condition of the physical equipment, which Dickinson presumably was not in a position to replace, rather than to Dickinson's mismanagement, we accept the conclusion of the Master and the District Court that there was no such negligence involved as to justify the surcharging of the operation losses to Dickinson's accounts.

8. We accept also the conclusions of the Master and the District Court that Dickinson should not be surcharged for the expenses incurred in operating an office at Little Rock, or for the monies used in constructing an auxiliary gas mixing plant at Muskogee. The latter experiment, though done in good faith, was at least an exercise of loose judgment, but both items seem to us sufficiently to involve questions of fact on matters of bankruptcy administration as to which we do not feel that we have the right to say that the decision of the trial court was clearly erroneous. Federal Rules of Civil Procedure, Rule 52 (a), 28 U.S.C.A. following section 723c.

9. The same is true of the surcharges sought against Dickinson for monies paid to Oklahoma Petroleum Products Company out of the two estates. Dickinson, on the recommendation of M. B. Morgan, his general manager, and as the result also of some personal study on his own part, attempted to solve the gas shortage, with which he was constantly confronted from the inadequacy of the Cherokee Public Service Company's gas wells, by undertaking the auxiliary use of by-product gas derived from the distillation of gasoline. Morgan and his brother S. R. Morgan fraudulently obtained $10,000 from the two estates in connection with the setting up of this auxiliary plan, of which only $2,000 was later recovered, and for which fraud they were apparently prosecuted and imprisoned. They improvised their own dummy corporation for the purpose of "milking" the bankrupt estates and led Dickinson to believe that he was dealing with the Pure Oil Company, from whom the by-product gas was to be obtained. The manipulations of the Morgans in obtaining advances from Dickinson to put the plan in operation resulted in a direct loss to the bankrupt estates. The whole matter was rather loosely and uncommendably handled, but in view of the Referee's approval of the transaction at the time and of the Master's and the District Court's finding that Dickinson was justified in attempting to find some means of obtaining an auxiliary supply of gas and that, on the facts in the record, he exercised good faith and due diligence in the matter, it does not seem to us that we would be justified in saying that the decision of the trial court was clearly erroneous. Federal Rules of Civil Procedure,

rule 52 (a), 28 U.S.C.A. following section 723c. Complaint is made of the fact that the $2,000 which was recovered was turned over to Cherokee Products Company, whereas it was originally paid out from the funds of Municipal Gas Company, but in view of the indebtedness owing from the latter corporation to Cherokee Products Company, even though such a method of transferring funds might be irregular, it was purely a bookkeeping problem and did not result in any loss.

The whole case presents rather an uncomplimentary picture of bankruptcy administration. The fault is hardly entirely the trustee's, since the referee appears to have sanctioned Dickinson's manner of doing business by countersigning checks for him throughout his six years of operation. Possibly those having the beneficial interest in the estates also are not without blame in having allowed the estates to be operated for such an extended period, without compelling liquidation.

But without further consideration of the general faults involved, we are compelled to reverse the judgment of the District Court as to the items of surcharge herein referred to as numbers 3, 4, and 5, and shall affirm it as to the remainder of the items. Interest will be allowed upon the surcharges made, from the time when the funds involved were paid out of the estates. The costs of the appeal will be divided equally between the parties. The cause will be remanded to the trial court for the entry of a judgment in accord with this opinion.

Reversed in part; affirmed in part.