## In re JONES.
### No. 16024.

District Court, N. D. Ohio, W. D.

Feb. 20, 1948.

Ludwig & Busick, of Gibsonburg, Ohio, and Cotter & McFellin, of Toledo, Ohio, for David Ellis Jones.

Charles S. Fox, in pro. per.

KLOEB, District Judge.

This matter comes before this Court on the motion of the bankrupt, David Ellis Jones, for a permanent injunction enjoining Charles S. Fox, Attorney-Claimant, Hal De Ran, his Attorney, and Herbert L. Meyers, Sheriff of Sandusky County, Ohio, from proceeding with the sale of certain real estate, the property of the bankrupt. On September 12, 1947, after hearing, this Court issued a preliminary injunction restraining the aforementioned parties from selling the real estate.

The facts of this case are amply set forth in the report of the Referee filed March 24, 1947, and in his Findings of Fact and Conclusions of Law filed on September 3, 1947. To supplement this recitation of facts, it might be of assistance to set forth, in chronological order, the various pertinent steps that were taken from the time that the petition was originally filed, as follows:

July 5, 1940—Petition for composition of debts filed by David Ellis Jones, Farmer-Debtor, under the provisions of Sec. 75, sub. a, 11 U.S.C.A. § 203, sub. a; Charles S. Fox, Attorney for petitioner;

July 15, 1940—Case referred to the County Conciliation Commissioner for Sandusky County, Ohio;

Oct. 14, 1940—Certificate of Conciliation Commissioner on failure to gain acceptance of creditors;

Oct. 14, 1940—Amendment of petition and adjudication of bankruptcy;

Mar. 8, 1941—Attorney Fox applied for and was allowed $100 compensation;

Sept. 30, 1941—Attorney Fox received $351.77 from the proceeds of the sale of a parcel of real estate which sold for $1,400 in excess of the appraised value. This and the preceding item of fee makes a total of $451.77 received by Fox as compensation for serving as Attorney for Mr. Jones;

May 29, 1944—Application of Farmer-Debtor to vacate adjudication of bankruptcy and dismiss case; Consent of creditors attached; Notice to creditors to file their claims mailed;

June 17, 1944—Order of dismissal by the Court at the costs of the Farmer-Debtor;

July 8, 1944—to Dec. 3, 1946—Charles S. Fox, Bankrupt's Attorney, brought suit against David Ellis Jones for $299 claimed for fees; Judgment obtained in Justice of the Peace Court, affirmed in Common Pleas Court and by the Court of Appeals, and motion to certify denied by Supreme Court;

Execution issued. Order to show cause issued by Referee on application of David Ellis Jones, and Sheriff agreed he would proceed no further with writ of execution and would abide by order of the Court;

Dec. 3, 1946—Hearing before the Referee;

Mar. 24, 1947—Report of Referee filed denying application of Jones for injunction;

Apr. 1, 1947—Objections to the report filed;

Sept. 3, 1947—Findings of Fact and Conclusions of Law of the Referee filed;

Sept. 9, 1947—Objection to the Findings and Conclusions filed;

Sept. 9, 1947—Motion for injunction filed with this Court to enjoin the Sheriff, et al., from proceeding with sale of real estate;

Sept. 12, 1947—Hearing had and preliminary injunction issued.

The handling of this case before the County Conciliation Commissioner presents a very uncomplimentary picture of bankruptcy administration. The Court is not inclined, however, to unduly criticize either the Conciliation Commissioner or the Attorney for the Farmer-Debtor, Charles S. Fox, for the loose manner in which the estate was administered. The fault lies with the system that was then in effect and that was set up under the provisions of the farm bankruptcy law as then obtained. The law provided for the administration of the estates of Farmer-Debtors through a system of County Conciliation Commissioners who were appointed by the District Court in each County in his Division or District. A small fee was provided for the Conciliation Commissioner and, in addition to serving as legal adviser for farmers contemplating bankruptcy proceedings, he served as the Court in the administration of the estate. The low pay and numerous duties made it next to impossible to secure Attorneys to serve as Commissioners. The administration of the law by laymen appointed to serve as Commissioners resulted in inexcusable delays and miscarriages of justice. The numerous Commissioners required by the system made it difficult, if not impossible, for the District Judge to adequately supervise the administration of Farmer-Debtor estates. A provision was made for a Supervising Conciliation Commissioner who was paid the sum of $5 per day, and it was found difficult to require him, for this meagre compensation, to take time out from his legal practice and frequently visit each of the county seats in order to do the work that the Conciliation Commissioners were supposed to do. Many of the Commissioners resigned and it was impossible to find successors. The amendment to the law that now permits the District Judge to refer these cases to a Referee in Bankruptcy, who has been appointed Commissioner for one or more Counties of the Judicial District, makes for the same dispatch and efficiency in the administration of Farmer-Debtor cases as exists in the administration of general bankruptcy matters. Centralized authority makes it easier for the Judge to keep in touch with bankruptcy proceedings.

The $100 fee that was paid to Mr. Fox on March 8, 1941 was properly applied for, allowed, and paid. The $351.77 that was paid to Mr. Fox for Attorney fees on September 30, 1941 was improperly paid. It appears from the record that a parcel of real estate, the property of the bankrupt, was sold through a real estate agent for the sum of $1,400 in excess of its appraised value. This excess sum was then divided, with the consent of the Conciliation Commissioner, but without formal application therefor, between the real estate agent, the bankrupt, the bankrupt's wife, and Attorney Fox. Because the Referee, in his findings, has concluded that the sum of $451.77 did not constitute excessive legal compensation, and because the bankrupt, in his brief in support of the exceptions to the report and the recommendations of the Referee, states that he does not insist upon a further re-administration and accounting of this estate if the Court feels that such a step would be impractical, the Court is not inclined to raise further question over the irregular payment of the $351.77. It is appropriate, however, in passing, to call attention to the provisions of Order

No. 42 of the General Orders in Bankruptcy, 11 U.S.C.A. following section 53, and to Rule 12 of the Bankruptcy Rules of the United States District Court for the Northern District of Ohio, adopted October 1, 1940. The Rule, in effect, provides for the same requirements that were set forth in Order No. 42 prior to its amendment June 1, 1936, and January 16, 1939. Attention is called to the case of Albers et al. v. Dickinson et al., 8 Cir., 127 F.2d 957, at page 961, wherein the Court, after analyzing the requirements of Order No. 42, has this to say: "Without a full compliance with these requirements, the trustee has no right to make any payment of attorney's fees out of the bankrupt estate; the referee is without authority to approve any payments which the trustee has thus made; and no attorney can legally receive or retain any such payments out of the estate for services which he may have rendered. In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d 602; In re Rogers-Pyatt Shellac Co., 2 Cir., 51 F.2d 988; In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95. The results may be drastic, as they no doubt will seem in the present case, but there is no way for the trustee, the referee or any attorney to avoid or thwart compliance with the requirements which the Supreme Court has prescribed as a matter of sound and necessary policy."

It appears from the record that, after the application of the Debtor to vacate the adjudication of bankruptcy and dismiss the case had been filed, accompanied with the consent of creditors, the Referee caused a notice to be mailed to all creditors, notifying them to file their claims within 10 days. Such a notice was mailed to Attorney Fox. No response was had from Mr. Fox to this notice.

On page 37 of the record, Mr. Fox gave his reason for not filing a claim for additional fees for legal services as follows: "Mr. Jones was having a very difficult time in * * * withdrawing his petition. He had a loan on the farm in Morrow County, and I believe he had made application to the Federal Land Bank of Louisville for enough money to pay off the mortgage; and that way, as soon as he had that taken care of, then he could say to the Court that his affairs were all in order. Had I put in a bill for my services in the Court, it would have made the sum more; and I don't think he had the money at the time; it would have made some difference as to when he could have gotten his case withdrawn from the Court. There was the question of time because the end of the 3-year period was rapidly running out and he had to get this case withdrawn before he could get the money from Louisville. He was borrowing the full sum there to take care of the rest of his indebtedness."

On page 39 of the record, Mr. Fox gives another reason why he failed to file his claim with the Referee as follows: "No; and I did not file my bill in the bankruptcy Court because upon his withdrawing from that Court, I figured it would put him in a position as any other individual; and he was a going concern now, and I could collect it after he got out of the bankruptcy Court; because at that time he still had some other assets in the hands of the Conciliator or Commissioner. He had some things there, and he had stocks there, and some notes, and I believe there was a little cash."

The record discloses a further reason why the Attorney failed to file his claim with the Court. It is his contention that about $25 of this fee of $299, that is now claimed to be due him, was for time and effort spent by him in conferring with the bankrupt and his wife in an effort to prevent a separation or a possible divorce proceeding which the Attorney felt might be inimical to a successful settlement of the bankruptcy proceedings. The balance of the $299 claimed is for special services claimed to have been rendered by the Attorney in approaching the creditors while the case was in the hands of the Conciliation Commissioner and securing from the creditors their consent to the acceptance of less than 100% of their claims.

The Referee in this case deserves the especial thanks and commendation of the Court for his patience and understanding in working out a conclusion to a very loosely administered estate. His Find-

ings and Conclusions are generally sound and acceptable. There is, however, one very vital point that precludes this Court from allowing Attorney Fox to proceed with the collection of an additional fee of $299. It is noted that the order of dismissal of this case was entered on June 17, 1944, and that exactly three weeks thereafter the Attorney began his suit in the state courts to recover from David Ellis Jones an additional fee of $299. Notwithstanding the fact that this case was dismissed in this Court at the costs of the Farmer-Debtor, this Court by that order retained jurisdiction to pass upon the costs properly chargeable to the estate of the Farmer-Debtor, including additional Attorney fees, if any, to which Mr. Fox might be entitled, and for which he sued in the state court, upon an application filed by him pursuant to law before the Conciliation Commissioner in response to the notice to do so which he received and flouted. The order of dismissal also did not relinquish the jurisdiction of this Court over the accounting by the Conciliation Commissioner in the case with regard to the undistributed assets of the Farmer-Debtor then in the possession of the Conciliation Commissioner, which was later ordered filed in this case. This Court is of the opinion that it would constitute loose practice and set bad precedent to permit an Attorney to refrain from filing his claim with the Referee upon notice had, stand upon his private belief that his claim for services is outside of the bankrupt estate being administered, and feel free to bring suit against the bankrupt in a state court after discharge. The orderly administration of the Farmer-Debtor's estate here required the Attorney to file his claim in response to notice, despite any private views that he may have had as to the nature of the claim, and to allow the Court to determine whether the claim was properly incurred in the administration of the bankrupt's estate or whether it was incurred at the behest of the bankrupt for services performed that were unrelated to the administration of the estate.

Whether the services performed by Attorney Fox and for which he now claims an additional sum of $299 were under special agreement had with the bankrupt for private services wholly unrelated to the administration of the estate was such a close question in this case as to require the claim to have been filed with the Referee in response to notice. There were funds on hand in the bankrupt's estate wherewith to pay the claim if allowed. The Referee was entitled to the privilege of inquiring into the claim at that time and before dismissal of the case in order to pass his judgment on the nature of the claim. It is noted, in passing, that the services performed, and for which the $299 is demanded, were services that were performed under cover of and by virtue of the bankruptcy proceedings. It is entirely possible that, if the Referee had been permitted to pass upon this claim before dismissal of the bankrupt, he may then have concluded that the services were such as that they could properly be paid for through an order of the Court. The Court is loathe to set a precedent whereby an Attorney in a bankruptcy proceeding may determine in his own mind, and from his own belief, the nature of his claim, refrain from presenting it to the Court, and then bring suit against the bankrupt after the close of the bankruptcy proceedings and when he believes that the bankrupt might then be "a going concern".

Because of the foregoing considerations, it is my judgment that the preliminary injunction heretofore issued should be made permanent, and it is so ordered.

Counsel for David Ellis Jones may prepare Findings of Fact and Conclusions of Law within 10 days, incorporating therein the Findings and Conclusions of the Referee heretofore filed which are not inconsistent with the conclusions of the Court expressed in this opinion, and may add thereto such additional Findings and Conclusions as may be justified by the wording of this opinion. Counsel for Attorney Fox may file his exceptions and suggested additions within 5 days thereafter.